EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elena Batista Valentín<br><br>Recurrida<br><br>v.<br><br>Sucn. de José Enrique Batista Valentín y otros<br><br>Peticionarios | Certiorari<br><br>2025 TSPR 93<br><br>216 DPR ___ |

Número del Caso:  CC-2024-0486


Fecha:  1 de octubre de 2025


Tribunal de Apelaciones:

    Panel Especial


Representante legal de la parte peticionaria:

    Lcdo. José G. Díaz Tejera


Representante legal de la parte recurrida:

    Lcdo. Jorge L. Marchand Heredia


Materia:  Procedimiento Civil;  Responsabilidad Civil Extracontractual; Obligaciones y Contratos – Disposición de un caso por la vía sumaria ante la insuficiencia de prueba para establecer los elementos constitutivos de la causa de acción; inaplicabilidad de la doctrina de interferencia culposa a una cónyuge por sus manifestaciones u objeciones con las obligaciones contractuales asumidas por el otro cónyuge.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elena Batista Valentín

     Recurrida

      v.                CC-2024-0486

Sucn. de José Enrique
Batista Valentín y otros

     Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 1 de octubre de 2025.

En esta ocasión, nos vemos precisados a resolver si el Tribunal de Apelaciones actuó correctamente al revocar una sentencia sumaria del Tribunal de Primera Instancia, en la que se desestimó una demanda por interferencia culposa, tras concluir que aún existían controversias sobre elementos subjetivos que impedían la adjudicación de la causa. Adelantamos que el Tribunal de Primera Instancia podía disponer de la causa de acción por la vía sumaria, en la medida en que la prueba presentada resultaba insuficiente para establecer los elementos constitutivos de dicha causa de acción.

Por otro lado, como parte del ejercicio de nuestra función revisora, debemos determinar si un cónyuge, que no forma parte de un contrato, puede interferir culposamente con las obligaciones contractuales asumidas por el otro cónyuge, mediante la manifestación verbal de sus objeciones. Además, nos corresponde aclarar el tipo de responsabilidad, si alguna, que tiene el cónyuge no contratante en el cumplimiento del contrato, en el cual el otro cónyuge figura como parte.

Tras el análisis correspondiente, adelantamos que ni las objeciones que pueda tener un cónyuge ni sus manifestaciones al respecto constituyen de por sí una interferencia culposa con las obligaciones del otro cónyuge. El cónyuge no contratante no está obligado a procurar que el otro cónyuge cumpla con sus obligaciones como parte.

Establecido este marco preliminar, procedemos a exponer el contexto procesal que motiva el ejercicio de nuestra función revisora.

I

La controversia ante nuestra consideración tuvo su origen el 25 de octubre de 2011. Ese día, la recurrida, Elena Batista Valentín, presentó una demanda sobre incumplimiento de contrato y daños y perjuicios en contra de los herederos José Enrique Batista Valentín, su esposa y aquí peticionaria, Damaris Reyes Montañez, Virgen Milagros Batista Valentín y Laura Elena Betancourt Valentín. En síntesis, la demanda se presentó luego de que el Sr. Enrique Batista Martínez falleciera en septiembre de 2010. Mediante testamento abierto, el causante declaró como únicos y universales herederos a sus hijos, todos de apellido

Batista Valentín. El 26 de julio de 2011, los herederos suscribieron libre y voluntariamente un *Acuerdo de Herederos* en el que establecieron todos los términos de la partición de la herencia. En virtud del acuerdo, los herederos se obligaron a otorgar unas escrituras de segregación, objeto de la adjudicación de la herencia de su señor padre. Empero, la señora Elena Batista adujo que el señor José Enrique se negó a otorgar la escritura de segregación por influencia de su esposa, la señora Reyes Montañez, quien supuestamente, de forma culposa e intencional, interfirió con la obligación contractual de su esposo.

Aún en medio del trámite del caso, el señor José Enrique falleció y fue sustituido por su sucesión, compuesta por Roberto Enrique Batista Pastrana, Iván José Batista Pastrana, Lidiette Marie Batista Pastrana, Gustavo Enrique Batista Reyes, José Enrique Batista Reyes, Fabián Enrique Batista Reyes, y su viuda, la señora Reyes Montañez. Posteriormente, la señora Reyes Montañez presentó su contestación a la segunda demanda enmendada, en la cual alegó que su difunto esposo no firmó las escrituras de segregación ya que estaba incapacitado, pues estaba sumamente enfermo al momento de suscribir el *Acuerdo de Herederos*.

Luego de varios trámites procesales, el 26 de mayo de 2016 el Tribunal de Primera Instancia emitió una sentencia parcial en la cual declaró con lugar la demanda por incumplimiento de contrato e interferencia torticera con relaciones contractuales. Inconforme, la señora Reyes Montañez presentó un recurso de apelación ante el Tribunal de Apelaciones. El foro

intermedio revocó la determinación del foro primario bajo el fundamento de que existían hechos materiales en controversia que versaban sobre la capacidad de consentir del señor José Enrique. Asimismo, concluyó que el foro primario estaba impedido de disponer del caso mediante el mecanismo de sentencia sumaria.

Devuelto el caso al Tribunal de Primera Instancia, el 21 de diciembre de 2018 la señora Reyes Montañez presentó una moción de sentencia sumaria en la que adujo que no existía controversia real sobre los hechos materiales a la causa de acción de interferencia culposa. En suma, alegó que las objeciones que se le imputaron no constituían una interferencia culposa, ya que actuó bajo su función y deber de cónyuge.

Por su parte, la señora Elena Batista se opuso y alegó que la señora Reyes Montañez había incurrido en interferencia culposa porque no le permitió al señor José Enrique firmar la escritura de segregación. Además, sostuvo que las expresiones de la señora Reyes Montañez al contestar que no llevaría ni permitiría que su esposo firmara las escrituras, aún en su propia casa, probaban que actuó intencionalmente y ocasionó el incumplimiento con el *Acuerdo de Herederos*.

Previo a que se resolvieran las mociones dispositivas del caso, el 21 de junio de 2019 las partes presentaron una moción conjunta en la cual acordaron que la señora Reyes Montañez retiraría su defensa de incapacidad en cuanto a su esposo, el señor José Enrique, a cambio de que la señora Elena Batista enmendara el *Acuerdo de Herederos*. El 3 de julio de 2019, el foro primario acogió los acuerdos de las partes y ordenó el

archivo y sobreseimiento del caso. Así las cosas, el 19 de agosto de 2019 la señora Elena Batista presentó una moción para solicitar que se atendiera la reclamación de interferencia torticera pendiente de adjudicación.

Luego de evaluados los argumentos de las partes en una vista, el 30 de enero de 2020 el foro primario ordenó la reapertura del caso y continuación de los procedimientos. Además, emitió una sentencia parcial a los fines de enmendar la sentencia dictada el 3 de julio de 2019.

El 6 de octubre de 2022, el Tribunal de Primera Instancia notificó una sentencia sumaria en la cual desestimó con perjuicio la causa de acción por interferencia torticera. El foro primario no consignó hechos probados ni consignó separadamente sus conclusiones de derecho.

En reacción, la señora Elena Batista presentó una moción de reconsideración, en la que adujo que el foro primario actuó incorrecta e injustificadamente al notificar una sentencia sumaria sin determinaciones de hechos y desestimar la causa de acción de interferencia torticera sin proveer fundamentos. Sin embargo, su solicitud fue denegada.

En desacuerdo, la señora Elena Batista acudió al Tribunal de Apelaciones, pero el recurso se desestimó por incumplimiento con el requisito de notificación a todas las partes.

Más adelante, el 6 de febrero de 2024 la recurrida presentó una moción de relevo de sentencia. Adujo que las sentencias emitidas por el foro primario para el 2019 y 2022 no se notificaron debidamente a varios codemandados en rebeldía. El Tribunal de Primera Instancia acogió su solicitud y ordenó la

notificación de ambas sentencias a las partes. Ese mismo día, la secretaría del tribunal notificó ambas sentencias a todas las partes.

Sin más, el 21 de marzo de 2024, la señora Elena Batista presentó un nuevo recurso de apelación ante el Tribunal de Apelaciones. Señaló como único error, que el foro primario se equivocó al desestimar sumariamente la causa de acción de interferencia torticera sin ofrecer una relación de hechos incontrovertidos ni conclusiones de derecho. Así, el 24 de junio de 2024 el Tribunal de Apelaciones revocó la sentencia y determinó que existían controversias sobre hechos materiales que impedían la adjudicación de la causa por la vía sumaria.

Inconforme, el 12 de agosto de 2024 la señora Reyes Montañez acude ante nos mediante el recurso de certiorari que nos ocupa. Señala que el Tribunal de Apelaciones se equivocó al revocar la sentencia del foro primario. Argumenta que la señora Elena Batista basó su causa de acción únicamente en las objeciones que ella mantenía para con el acuerdo de herederos, a saber: afirmar que no llevaría a su esposo a firmar las escrituras de segregación, que no estaba de acuerdo y que no permitiría a su esposo firmar. Aduce que la señora Elena Batista no presentó ningún hecho que evidenciare un acto de interferencia con el contrato objeto de la controversia. Por el contrario, alega que se le estaba imponiendo una obligación de hacer, sin que ella fuera parte en el contrato.[1]

---

[1] Conforme a la Regla 20(d) del Reglamento de este Tribunal, la parte peticionaria debía notificar copia del recurso al Tribunal de Apelaciones dentro del término de setenta y dos (72) horas. Dicho término vencía el 15

Expedido el auto de *certiorari*, y tras la comparecencia de las partes, procedemos a resolver, no sin antes esbozar el derecho aplicable.

II

### *Sentencia Sumaria*

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, regula todo lo concerniente a la sentencia sumaria. Soto y otros v. Sky Caterers, 2025 TSPR 3, 215 DPR __ (2025); Cruz, López v. Casa Bella y otros, 213 DPR 980, 993 (2024); Aponte Valentín *et al*. v. Pfizer Pharm., 208 DPR 263, 277 (2021). El propósito principal de este mecanismo procesal es propiciar "una solución rápida, justa y económica en los casos de naturaleza civil en los que no existan hechos materiales en controversia". Soto y otros v. Sky Caterers, supra (citando a Oriental Bank v. Perapi *et al.*, 192 DPR 7, 25 (2014)). En ese sentido, la sentencia sumaria resulta adecuada en los casos en donde no existen dudas sobre los hechos esenciales que hagan necesaria la celebración de un juicio, por lo cual solo resta aplicar el derecho a los hechos no controvertidos. Soto y otros v. Sky Caterers, supra;

---

de agosto de 2024 y se extendió hasta el viernes, 16 de agosto de 2024 en virtud de la *Resolución EM-2024-0012* emitida por este Tribunal ante el paso de la Tormenta Ernesto. El 19 de agosto de 2024, la señora Reyes Montañez presentó una moción informativa en la cual expresó las razones por las que notificó el recurso de autos al foro apelativo en exceso del término dispuesto. En síntesis, la peticionaria indicó que, a pesar de que la moción estuvo lista con antelación, esta se traspapeló en el proceso de tomar medidas para asegurar archivos y expedientes debido al paso de la Tormenta Ernesto. Ante este marco procesal, esta Curia decidió expedir el recurso discrecional para atender el caso en sus méritos el 31 de enero de 2025. Si bien la señora Reyes Montañez cumplió tardíamente con las exigencias de la Regla 20(d) de nuestro Reglamento, la peticionaria explicó debidamente las razones para ello. Por ello, ante las inclemencias del tiempo, la señora Reyes Montañez logró excusar su demora. Precisamente, por la falta de trabas en nuestra jurisdicción, decidimos ejercer nuestra facultad de revisión en el caso de autos.

Consejo Tit. v. Rocca Dev. Corp., *et als.*, 2025 TSPR 6, 215 DPR __ (2025); Oriental Bank v. Perapi *et al.*, supra.

En particular, la Regla 36.3(e) dispone que un tribunal dictará sentencia sumariamente "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente". 32 LPRA Ap. V, R. 36.3(e).

Consecuentemente, hemos establecido que la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, releva a los tribunales de consignar sus determinaciones de hechos al momento de disponer de una controversia por la vía sumaria. Pérez Vargas v. Office Depot, 203 DPR 687, 703 (2019). En específico, expresamos que cuando el pleito en su totalidad es resuelto mediante una sentencia sumaria, no existe necesidad de consignar los hechos sobre los cuales no existe controversia. Íd., pág. 704.

Precisamente, eso fue lo que ocurrió aquí. El foro primario concluyó que no existían controversias de hechos materiales porque no surgía evidencia adicional que pudiese controvertir los hechos bien alegados. Debido a ello, el Tribunal de Primera Instancia dispuso totalmente de la moción de sentencia sumaria presentada por la peticionaria. Entiéndase, que la regla exime al tribunal de consignar sus determinaciones de hechos al momento de declarar con lugar una moción de sentencia sumaria en su totalidad. En ese sentido, el Tribunal de Primera Instancia actuó conforme a la norma que establecimos en Pérez

<u>Vargas v. Office Depot</u>, <u>supra</u>, al hacer uso del mecanismo de sentencia sumaria provisto en la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Por ende, el Tribunal de Apelaciones no tenía razón al revocar la sentencia sumaria que dictó el foro primario.

Por último, sobre el alcance de la revisión judicial, hemos expresado reiteradamente que los tribunales apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. <u>Íd</u>., pág. 994; <u>Birriel Colón v. Econo y otro</u>, 213 DPR 80 (2023). Sin embargo, en nuestra revisión estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. <u>Birriel Colón v. Econo y otro</u>, <u>supra</u>, pág. 91. En suma, nuestra función revisora conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria. <u>Íd</u>., págs. 91-92; <u>Meléndez González *et al*. v. M. Cuebas</u>, 193 DPR 100, 118 (2015).

En el recurso ante nuestra consideración, la señora Reyes Montañez asevera que el Tribunal de Apelaciones erró al revocar la sentencia sumaria que dictó el Tribunal de Primera Instancia, usando como fundamento que habían hechos materiales en controversia. En ese sentido, debemos determinar si el Tribunal de Primera Instancia podía disponer de la demanda de interferencia torticera por la vía sumaria.

Según expusimos, el mecanismo de sentencia sumaria tiene como fin último disponer de una causa de acción de forma rápida

cuando no existen hechos materiales en controversia. A tenor de esto, hemos expresado que un hecho material es aquel que puede alterar la forma en que se resuelve una reclamación de acuerdo con el derecho sustantivo aplicable. Soto y otros v. Sky Caterers, supra. Como resultado, solamente se dictará sentencia sumaria en aquellos casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Consejo Tit. v. Rocca Dev. Corp., et als., supra.

De hecho, también hemos expresado que no existe impedimento alguno para que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención, cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales. Cruz, López v. Casa Bella y otros, supra, págs. 993-994. "Al así actuar, hemos sido consistentes con la norma de que 'la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular'". Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010)(citando a García López v. Méndez García, 88 DPR 363, 380 (1963).

Así pues, el hecho de que la controversia de autos involucrara elementos subjetivos y de intención no representa un obstáculo para disponer de ella sumariamente, puesto que de la solicitud de sentencia sumaria y sus anejos surge claramente que no hay controversia en torno a los hechos materiales.

Por ende, al no existir hechos materiales en controversia, el Tribunal de Primera Instancia podía disponer sumariamente de la controversia de autos, tal como lo hizo.

### III

**A. Obligaciones contractuales**

Resuelta esta pesquisa procesal, quedan pendientes de adjudicar las controversias sustantivas del caso de autos. Primero, debemos resolver si las actuaciones de la señora Reyes Montañez configuraron una causa de acción por interferencia torticera. Es decir, si las objeciones de la señora Reyes Montañez constituyeron un acto interventor que provocó que el señor José Enrique no firmara las escrituras de segregación. Por último, debemos determinar si la señora Reyes Montañez tenía obligación alguna de llevar a su esposo a firmar el acuerdo para cumplir con el contrato. Por estar estrechamente relacionados, procedemos a resolver estos asuntos sustantivos de manera conjunta.

De entrada, debemos señalar que evaluaremos las disposiciones del Código Civil de 1930 ("Código Civil de 1930"), por ser el cuerpo normativo aplicable al caso de marras.

Es un principio conocido que las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992. El Art. 1206 establece que existe un contrato cuando una o más personas consienten en obligarse a dar alguna cosa o prestar algún servicio. 31 LPRA ant. sec. 3371. En ese sentido,

para que un contrato tenga eficacia jurídica, será necesario que concurran los elementos de consentimiento, objeto y causa. Art. 1213 del Código Civil de 1930, 31 LPRA ant. sec. 3391.

Además, un contrato se considera perfeccionado con el mero consentimiento y, desde entonces, las partes quedan obligadas a cumplir con lo expresamente pactado y las consecuencias de su incumplimiento. Art. 1210 del Código Civil de 1930, 31 LPRA ant. sec. 3375. Es decir, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes. Art. 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994. Ahora bien, ese contrato solo produce efecto entre las partes que lo otorgan y sus herederos. Art. 1209 del Código Civil de 1930, 31 LPRA ant. sec. 3374.

En nuestro ordenamiento, se reconoce el principio de la autonomía de la voluntad como piedra angular de nuestro sistema económico. VDE Corporation v. F & R Contractors, 180 DPR 21, 33 (2010); Collazo Vázquez v. Huertas Infante, 171 DPR 84, 103 (2007). Este principio establece que, en materia de contratos, rige la libertad de contratación entre las partes. Collazo Vázquez v. Huertas Infante, supra. Entiéndase, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre y cuando no sean contrarias a la ley, la moral y el orden público. Art. 1207 del Código Civil de 1930, 31 LPRA ant. sec. 3372.

El Art. 1233 del Código Civil de 1930, 31 LPRA ant. sec. 3471, establece que cuando los términos del contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación, pues prevalece el

sentido literal de sus cláusulas. Sin embargo, cuando las palabras parecieren contrarias a la intención de las partes, prevalecerá la intención sobre éstas. VDE Corporation v. F & R Contractors, supra, pág. 35.

En ocasiones, no es posible determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas del contrato. S.L.G. Irizarry v. S.L.G. García, 155 DPR 713, 726 (2001). En tales circunstancias, el Art. 1234 establece que se podrá juzgar la voluntad de las partes observando los actos anteriores, coetáneos y posteriores a la perfección del contrato, así como cualquier otro factor que arroje luz en torno a este asunto. Art. 1234 del Código Civil de 1930, 31 LPRA ant. sec. 3472; Negrón Vélez v. ACT, 196 DPR 489, 506-507 (2016).

### B. Interferencia Culposa

En Gen. Office Prods. v. A. M. Capen's Sons, 115 DPR 553, 558 (1984), reconocimos por primera vez que el Art. 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, permitía la acción por interferencia culposa con obligaciones contractuales de terceros. Es decir, reconocimos una acción en daños contra un tercero que, con intención cuasidelictual o culposa, interfiere con las relaciones contractuales de otro. Jusino et als. v. Walgreens, 155 DPR 560, 575 (2001). En ese sentido, el elemento de intención que exige la doctrina para incurrir en responsabilidad requiere que el tercero que interfiere sepa o debería saber que su actuación producirá una lesión. Íd.

En reiteradas ocasiones, hemos señalado que son cuatro los elementos constitutivos de la acción. Debe probarse: (1) la existencia de un contrato con el cual interfiera un tercero;

(2) que medie culpa; (3) que haya ocasionado un daño al actor, y (4) que el daño sea consecuencia de la actuación culposa del tercero, o sea, que el nexo causal debe ser entre el acto del tercero y su efecto sobre el perjudicado. Jusino *et als*. v. Walgreens, supra; Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 DPR 869, 879 (1991).

En cuanto al primer elemento, hemos expresado que si lo que se afecta es una expectativa o relación económica provechosa, sin que medie contrato, no procede la acción de daños por interferencia culposa. Gen. Office Prods. v. A. M. Capen's Sons, supra, pág. 559. Asimismo, hemos sido consistentes al expresarnos sobre el segundo elemento. Para que medie culpa, bastará con que el perjudicado pruebe o presente hechos que permitan inferir que el tercero actuó intencionalmente, esto es, con conocimiento de la existencia del contrato. Íd. Para probar la existencia del nexo causal entre el acto del tercero y su efecto sobre el perjudicado, bastará con que el tercero haya provocado o contribuido a la inejecución. Íd.

A la luz de ese marco jurídico, procedemos a resolver la controversia de derecho que nos ocupa.

IV

Como expusimos, la controversia central gira en torno a que el señor José Enrique no firmó las escrituras de segregación, acto al que se obligó cuando firmó el *Acuerdo de Herederos*. La señora Elena Batista alega que la firma de esas escrituras no se llevó a cabo, debido a las afirmaciones que hizo la esposa del señor José Enrique, la aquí peticionaria.

Por ello, la señora Elena Batista sostiene que la señora Reyes Montañez interfirió culposamente con el acuerdo entre su esposo y los demás herederos.

Ahora bien, cuando hablamos de una acción de daños por interferencia culposa debemos observar que concurran los cuatro elementos reconocidos jurisprudencialmente en Gen. Office Prods. v. A. M. Capen's Sons, supra, págs. 558-559.

En primer lugar, el ordenamiento requiere que exista un contrato con el cual se interfiera. Íd. Tomando como ciertos los hechos bien alegados en la demanda y en la moción de sentencia sumaria, no tenemos duda de que aquí existía un contrato y no una mera expectativa de contratar, a saber: el *Acuerdo de Herederos* que firmaron, entre otros, el señor José Enrique y la señora Elena Batista.

En segundo lugar, es necesario que haya mediado culpa, es decir, que el tercero actuó de manera intencional, a sabiendas de que existía un contrato y que se causaría un perjuicio. Íd. El elemento de intención que se necesita para adjudicar responsabilidad a un tercero es que ese tercero haya actuado de tal forma que sepa que va a producir un daño. Véase, Jusino *et als*. v. Walgreens, supra, pág. 575.

Sobre este particular, la única prueba que surge del expediente del caso de autos son las afirmaciones que hizo la señora Reyes Montañez sobre su desacuerdo con las obligaciones del señor José Enrique. A modo de ejemplo, la señora Reyes Montañez verbalizó que estaba en desacuerdo con que su esposo firmara las escrituras de segregación. Además, expresó que no

llevaría a su esposo a firmar, ni permitiría que su esposo firmara las escrituras de segregación.

Como bien argumenta la señora Reyes Montañez en su recurso, el hecho de expresar su desacuerdo no constituye una interferencia culposa susceptible de responsabilidad. La mayoría de las expresiones de la señora Reyes Montañez fueron aseveraciones en futuro. Lo cierto es que no se configura ningún hecho o prueba que pudiera permitirnos inferir que, en efecto, la señora Reyes Montañez interfirió culposamente con las obligaciones de su esposo. Las meras objeciones no constituyen ni pueden probarse como un acto de intervención para fines de la doctrina de interferencia culposa.

Al determinar que no se configuró el segundo elemento de intención, concluimos que tampoco se configuró el elemento de nexo causal entre el daño provocado y la acción del tercero. Por tanto, no se dieron los elementos necesarios para que se constituya una causa de acción por interferencia culposa.

Además, debemos aclarar que la señora Reyes Montañez no tenía obligación alguna con respecto al cumplimiento del *Acuerdo de Herederos*. Según establece el Código Civil, los contratos obligan a las partes que libremente los otorgan. Arts. 1044 y 1210 del Código Civil, 31 LPRA ant. sec. 2994, 3375. Es parte quien libremente consiente y, por tanto, se obliga a dar una cosa o prestar un servicio. Art. 1206 del Código Civil de 1930, 31 LPRA ant. sec. 2992.

Con arreglo a estos principios básicos de contratación, no hay dudas de que los únicos obligados a dar cumplimiento al *Acuerdo de Herederos* eran, precisamente, los herederos, entre

los cuales figuraban el señor José Enrique y la señora Elena Batista. El señor José Enrique no firmó las escrituras de segregación porque estaba enfermo y falleció. La señora Reyes Montañez no tenía obligación alguna de procurar que su esposo firmara las escrituras. La responsabilidad de cumplir con el *Acuerdo de Herederos* le correspondía exclusivamente al señor José Enrique. Dictar lo contrario impondría obligaciones onerosas a los cónyuges que no figuran como parte en un contrato.

En este caso, la señora Elena Batista no cuenta con prueba suficiente que nos permita concluir que la señora Reyes Montañez actuó culposamente y en contravención con alguna obligación contractual. Más llanamente, no existe evidencia en el récord que nos permita concluir que ella tenía una obligación adicional a la de cuidar y apercibir a su cónyuge. Además, no le corresponde a este Tribunal pasar juicio sobre las opiniones y meras manifestaciones de un cónyuge con respecto a la actuación del otro. Lo anterior sería una intromisión caprichosa e injustificada, además de ser una interpretación errónea del derecho antes esbozado.

En fin, concluimos que el Tribunal de Primera Instancia actuó conforme a derecho al dictar sentencia sumaria en el caso de autos, ya que no existe evidencia o prueba adicional que demuestre la existencia de una causa de acción al amparo del Art. 1802 del Código Civil de 1930, supra. Por tanto, el Tribunal de Primera Instancia podía disponer de la causa de acción de interferencia torticera por la vía sumaria. Erró el Tribunal de Apelaciones al revocar al foro primario.

V

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la sentencia sumaria del Tribunal de Primera Instancia.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Elena Batista Valentín

    Recurrida

       v.                  CC-2024-0486

Sucn. de José Enrique
Batista Valentín y otros

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 1 de octubre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la sentencia sumaria del Tribunal de Primera Instancia.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión disidente.

El Juez Asociado señor Colón Pérez disiente del curso de acción seguido por una mayoría de este Tribunal, y emite las siguientes expresiones:

Hoy, una mayoría de mis compañeras y compañeros de estrado, al optar por atender el recurso de epígrafe, obvian un principio básico del ordenamiento procesal civil puertorriqueño, a saber: ***cuando un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la misma***. Con dicha actuación, --y atendiendo someramente el asunto en una nota al calce--, éstas y éstos, una vez más, se empeñan en pautar normas en escenarios donde no estamos habilitados para ello. Nos explicamos.

Sabido es que los tribunales "tienen la responsabilidad indelegable de examinar, en primera instancia, su propia jurisdicción". *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). Véase también, *Yumac Home v. Empresas Masso,* 194 DPR 96, 103 (2015) y *Horizon v. JTA. Revisora, RA Holdings*, 191 DPR 228, 233-234 (2014). Como corolario de dicho principio, hemos sentenciado que los asuntos relativos a la jurisdicción son materia privilegiada y deben ser atendidos con preferencia. *R&B Power, Inc. v. Junta de Subastas*, 213 DPR 685, 698 (2024); *Ruiz Camilo v. Trafon Group, Inc., supra; Mun. de San Sebastián v. QMC Telecom, LLC.*, 190 DPR 652, 660 (2014).

En esa dirección, y según adelantamos, cuando un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas, supra; Ruiz Camilo v. Trafon Group, Inc., supra,* pág. 269; *Mun. de San Sebastián, v. QMC Telecom, LLC., supra*. Ello, pues, un foro judicial no tiene discreción para asumir jurisdicción donde no la hay. *Mun. de San Sebastián, v. QMC Telecom, LLC., supra; Souffront v. A.A.A.,* 164 DPR 663, 674 (2005); *Morán v. Martí*, 165 DPR 356, 364 (2005).

En lo pertinente a la causa de epígrafe, cabe señalar aquí que uno de los asuntos que incide en la jurisdicción de un tribunal revisor es "la falta de notificación al tribunal inferior sobre la presentación de un recurso apelativo". *Isleta, LLC v. Inversiones Isleta Marina Inc.,* 203 DPR 585, 591 (2019). Al respecto, el inciso (d) de la Regla 20 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, dispone que la parte que presente una petición de *certiorari* ante nos deberá notificarlo a la Secretaría del Tribunal de Apelaciones, dentro de las setenta y dos (72) horas siguientes a la presentación de la solicitud. A su vez, la precitada regla establece que dicho término es de cumplimiento estricto. *Íd*.

**Sobre este extremo, es importante recordar que un término de cumplimiento estricto, a diferencia de uno de naturaleza jurisdiccional, puede ser prorrogado por los tribunales.** *Soto Pino v. Uno Radio Group*, 189 DPR 84, 92 (2013); *García Ramis v. Serrallés*, 171 DPR 250, 253 (2007); *Lugo Rodríguez v. Suárez Camejo*, 165 DPR 729, 738 (2005). **Ahora bien, para que lo anterior ocurra la parte que actúa fuera de término tiene que demostrar que hubo justa causa para incumplir con el requisito establecido.** *Soto Pino v. Uno Radio Group, supra; García Ramis v.*

*Serrallés, supra*; *Rojas v. Axtmayer Ent., Inc.* 150 DPR 560, 569 (2000).

Cónsono con lo anterior, en el pasado, este Tribunal ha sido enfático en que, para acreditar la existencia de justa causa en dilaciones de este tipo, la parte en cuestión debe hacer constar circunstancias específicas que ameriten tal consideración. *Freire Ruíz v. Morales Román*, 2024 TSPR 129, 12; *Soto Pino v. Uno Radio Group*, *supra*. Véase también *S.L.G. Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). **En particular, hemos establecido que la acreditación de justa causa debe realizarse con explicaciones concretas, particulares y debidamente evidenciadas, puesto que "las vaguedades y las excusas o los planteamientos estereotipados" no son suficientes.** (Énfasis suplido). *Soto Pino v. Uno Radio Group*, *supra*, pág. 93. Véase también *Febles v. Romar*, 159 DPR 714, 720 (2003). Ello no sucedió aquí.

En este caso, y en extrema síntesis, el 12 de agosto de 2024 la Sra. Damaris Reyes Montañez (en adelante, "señora Reyes Montañez") presentó ante nos cierto recurso de *Certiorari*, mediante el cual cuestionó la procedencia de una *Demanda* sobre interferencia torticera presentada en su contra por la Sra. Elena Batista Valentín. De conformidad la referida Regla 20(d) del Reglamento de este Tribunal, *supra*, dicha parte, de ordinario, hubiese tenido hasta el **15 de agosto de 2024** para realizar la correspondiente notificación al foro apelativo intermedio.

**No obstante, debido al paso de la Tormenta Tropical Ernesto, emitimos una *Resolución* en virtud de la cual dispusimos que cualquier término que venciere entre los días 13, 14 y 15 de agosto de 2024, se extendería hasta el viernes, 16 de agosto de 2024.**

Así las cosas, el **19 de agosto de 2024** la señora Reyes Montañez compareció ante este Tribunal mediante una *Moción informativa*. En su escrito, ésta expuso que ese mismo día, --a saber, tres (3) días después de que venciese la referida extensión del término--, había notificado al Tribunal de Apelaciones sobre la presentación del mencionado recurso.

Para fundamentar su dilación, la señora Reyes Montañez alegó que la moción correspondiente se había traspapelado, "mientras se tomaban medidas para asegurar archivos y expedientes para enfrentar la tormenta Ernesto". Véase *Moción informativa*, pág.

1. A su vez, añadió que "estaba bajo la impresión de que [la misma] había sido referida para la radicación ante el Tribunal de Apelaciones" y que no fue hasta la noche del viernes, 16 de agosto de 2024, que advino en conocimiento de que nunca se presentó. *Íd*. **A nuestro juicio, dicha justificación no cumple con el estándar de justa causa antes reseñado.**

Y es que, en primer lugar, los planteamientos de la señora Reyes Montañez nos parecen sumamente vagos y estereotipados; en otras palabras, sus argumentos carecen del detalle que se espera en este tipo de instancias. En segundo lugar, y tal vez más importante, dicha parte incumplió con el término para la notificación, aun cuando el mismo fue extendido precisamente para atender la situación de la tormenta tropical.

**Si bien las circunstancias que rodean un evento atmosférico podrían constituir justa causa ante el incumplimiento con un requisito como el aquí bajo estudio, lo cierto es que no podemos condonar toda omisión que surja en escenarios como estos, pues de lo contrario, y como hemos dispuesto anteriormente, los términos reglamentarios se convertirían en "metas amorfas que cualquier parte podría postergar".** (Énfasis suplido). *Rivera Marcucci v. Suiza Dairy*, 196 DPR 157, 172 (2016). Véase también, *Soto Pino v. Uno Radio Group*, *supra*, pág. 93. **Con su silencio sobre el particular, la omisión de la señora Reyes Montañez, de cumplir con los requisitos de notificación que impone el ordenamiento procesal civil puertorriqueño, fue condonada por una mayoría de este Tribunal.**

Con tan errado proceder, el juez que suscribe no puede estar de acuerdo. Por ello, disentimos.

La Jueza Presidenta Oronoz Rodríguez no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Elena Batista Valentín<br><br>Recurrida<br><br>v.<br><br>Sucn. de José Enrique<br>Batista Valentín y otros<br><br>Peticionarios | CC-2024-0486 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 1 de octubre de 2025.

Nuevamente, el mecanismo procesal de la sentencia sumaria fue utilizado incorrectamente. En esta ocasión, con la decisión que hoy adopta este Tribunal, se valida una determinación del foro primario que dispuso que no existían hechos medulares en controversia para desestimar la última causa de acción de una demanda en la que se alegó que una cónyuge no contratante interfirió culposamente con las obligaciones contractuales asumidas por el otro cónyuge. Respetuosamente disiento, por considerar que existían hechos esenciales y pertinentes en controversia que ameritaban la celebración de un juicio para determinar si la cónyuge, con

sus acciones y omisiones, interfirió culposamente con la obligación contractual contraída por su esposo.

I

El 25 de octubre de 2011, la Sra. Elena Batista Valentín (señora Batista Valentín o recurrida) demandó por incumplimiento de contrato a varias personas relacionadas con la sucesión de su padre, el Sr. Enrique Batista Martínez (causante), fallecido en septiembre de 2010. Entre estos, figuraron: (1) su hermano, el Sr. José E. Batista Valentín (Don José Batista); (2) su cuñada, la esposa de este último, la Sra. Damaris Reyes Montañez (señora Reyes Montañez o peticionaria); (3) su hermana, la Sra. Virgen María Batista Valentín; (4) la viuda del causante, la Sra. María Rosario Valentín Ramos; y (5) la albacea, la Sra. Laura Betancourt Valentín.

En la reclamación, la señora Batista Valentín alegó que el 26 de julio de 2011 los herederos del causante suscribieron un *Acuerdo de herederos* en el que se comprometieron a otorgar una escritura de segregación como parte de la partición de la herencia. Pese a ello, según adujo, Don José Batista se negó a otorgar la escritura porque la señora Reyes Montañez le influenció y de forma culposa e intencional intervino en la obligación contractual de su esposo. A eso, sumó que la peticionaria comunicó a los herederos que Don José Batista no cumpliría a menos que se dejara sin efecto el *Acuerdo de herederos*. Por eso, a la

señora Reyes Montañez le imputó interferencia culposa con las obligaciones contractuales de su esposo, Don José Batista, quien falleció durante el trámite del caso.

Por su parte, la señora Reyes Montañez contestó, entre otras cosas, que Don José Batista no firmó porque estaba sumamente enfermo y no tenía la capacidad para consentir a cualquier tipo de transacción.

Luego de múltiples trámites procesales, tanto la recurrida como la peticionaria presentaron sendas solicitudes de sentencia sumaria a su favor. Por un lado, la señora Reyes Montañez solicitó que se desestimara la causa de acción. A su entender, las objeciones que se le imputaron no constituyeron interferencia culposa porque se dieron bajo su función y deber de cónyuge. Igualmente, arguyó que sus objeciones no fueron un acto intencional con el fin de ocasionar un daño a una relación contractual, sino que respondieron a una preocupación legítima sobre la capacidad y la salud de Don José Batista. Ahora bien, en la relación de hechos que propuso como incontrovertidos, no incluyó referencia alguna a las imputaciones que le hiciera la señora Batista Valentín en su reclamación.

Por otro lado, la señora Batista Valentín argumentó que la señora Reyes Montañez no le permitió a Don José Batista firmar la escritura de segregación, y que su contestación de que no llevaría ni permitiría a su esposo firmar las escrituras en su propia casa constituía prueba de que

ocasionó el incumplimiento del *Acuerdo de herederos*. Basándose principalmente en la deposición de la señora Reyes Montañez, la recurrida esbozó que no estaba en controversia que Don José Batista se encontraba incapacitado físicamente y dependía del cuidado y transporte de la señora Reyes Montañez, quien no contaba con un diagnóstico médico que acreditara la presunta incapacidad mental de su esposo ni había entablado procedimiento judicial alguno para que esta fuera declarada. Según agregó, fue en ese contexto que la peticionaria se negó a llevar a Don José Batista a las reuniones citadas por un notario para otorgar la escritura de segregación. A ello, añadió y reiteró las objeciones de la señora Reyes Montañez, su rechazo a colaborar hasta que no se modificara el *Acuerdo de herederos* y su promesa constante de impedir que Don José Batista firmara incluso cuando se visitara su hogar.

El 28 de septiembre de 2022, el Tribunal de Primera Instancia dictó una *Sentencia sumaria* en la que desestimó con perjuicio la causa de acción por interferencia torticera con relaciones contractuales. El foro primario no consignó hechos esenciales sobre los cuales no existía controversia ni conclusiones de derecho. El dictamen fue notificado correctamente a las partes el 21 de febrero de 2024.

Inconforme, la señora Batista Valentín apeló ante el foro intermedio y señaló como error la ausencia de determinaciones de hechos y conclusiones de derecho.

Producto de ello, el Tribunal de Apelaciones revocó la *Sentencia sumaria* y resolvió que existían controversias de hechos materiales. En los méritos, determinó que se cumplieron dos (2) de los cuatro (4) requisitos de la interferencia culposa: la existencia de un contrato con el cual interfirió una tercera persona y la ocurrencia de un daño. Por eso, estimó que restaba dilucidar si la señora Reyes Montañez actuó de forma culposa y si existió un nexo causal entre su actuación y la falta de ejecución del *Acuerdo de herederos*.

Cabe resaltar que, a juicio del foro apelativo, existían controversias de naturaleza subjetiva que impedían la adjudicación de la causa por la vía sumaria, toda vez que una reclamación de interferencia culposa se basa precisamente en elementos subjetivos de intención, propósito mental y credibilidad.

Inconforme, la señora Reyes Montañez acudió ante nos mediante el recurso de certiorari de epígrafe. Según su posición, la señora Batista Valentín no presentó ningún hecho para evidenciar un acto de interferencia con el *Acuerdo de herederos* y basó su reclamación únicamente en las objeciones que la peticionaria mantenía al respecto. A su entender, resolver lo contrario sería imponerle una obligación de hacer sin que fuera parte de ese contrato.

En oposición, la señora Batista Valentín subrayó que: (1) la *Sentencia sumaria* del foro primario se basó en una

moción de sentencia sumaria radicada por la peticionaria cuatro (4) años antes y se emitió a destiempo, apenas doce (12) días antes de la fecha separada para el comienzo del juicio en su fondo; (2) la señora Reyes Montañez renunció, mediante un acuerdo por escrito, a su defensa sobre la incapacidad de Don José Batista y, por ello, no podía sostenerla como razón para que no se cumpliera el *Acuerdo de herederos*; (3) en una deposición, la señora Reyes Montañez admitió que no tenía conocimiento sobre el entendimiento del acuerdo por Don José Batista, no poseía un diagnóstico médico sobre su presunta incapacidad mental y tampoco había iniciado un procedimiento judicial para declararlo incapaz; y (4) se cumplieron todos los elementos constitutivos de la interferencia culposa.

Ante ese escenario y por las razones que expondré a continuación, considero que el Tribunal de Apelaciones revocó correctamente la *Sentencia sumaria* emitida por el foro primario. A mi juicio, la tarea de pautar si una cónyuge no contratante puede interferir culposamente con las obligaciones contractuales asumidas por su esposo no debió realizarse en esta etapa de los procedimientos. Las conclusiones de derecho que acompañan el dictamen de la mayoría de este Tribunal se dan bajo el supuesto de la inexistencia de actos dirigidos a tal propósito. Sin embargo, un examen sosegado del expediente revela que esta no es la etapa procesal adecuada para aventurarse a descartarlo, tal y como lo ha hecho la *Opinión mayoritaria*.

Además, existen suficientes hechos en controversia que van a la médula de determinar si se configuran o no todos los elementos constitutivos de la causa de acción por interferencia culposa. Como veremos a continuación, en este caso existen acciones u omisiones descartadas por la *Opinión mayoritaria* que ameritan la celebración de un juicio, tal y como dictaminó el Tribunal de Apelaciones.

## II

De entrada, esta controversia nos brinda la oportunidad de reafirmar la necesidad de realizar un análisis contextual de cada caso. No todas las personas contratantes son iguales. En ese sentido, no podemos perder de perspectiva las alegaciones de ambas partes y los documentos en sustento de ello respecto al cuadro clínico y la dependencia de Don José Batista de la figura de su cónyuge, la señora Reyes Montañez, para realizar todo tipo de gestiones. Cuando, por razones de salud, una persona depende día a día de su cónyuge para transporte y cuidado, no podemos hacer caso omiso al grado de control que este ejerce sobre su quehacer. Mucho menos podemos ignorar las propias admisiones de esa cónyuge respecto a que ejercería el poder que tenía sobre su esposo para impedir el cumplimiento de una obligación.

Por ello, y contrario al proceder mayoritario, no debemos pasar por alto la *Oposición a moción solicitando sentencia sumaria parcial y solicitud de sentencia sumaria* de la señora Batista Valentín, en la que propuso algunos hechos medulares que podrían dar base a interferencia

culposa en el contexto de este caso. La mayoría de estos hechos se basaron en la deposición tomada a la señora Reyes Montañez. En específico, la recurrida esbozó como hechos incontrovertidos que: (1) Don José Batista tenía un tumor cerebral que lo mantenía encamado; (2) la señora Reyes Montañez estaba encargada del cuidado de Don José Batista y era quien le proporcionaba transporte (en palabras de la peticionaria "él depende de mí"[1]); (3) en dos ocasiones, los herederos fueron citados por un notario para otorgar las escrituras y la señora Reyes Montañez, con conocimiento de ello, se negó a llevar a su esposo; (4) la peticionaria expresó que mientras no se alterara el *Acuerdo de herederos* ella se negaría a llevar a su esposo a firmar las escrituras; (5) la señora Reyes Montañez se negó a transportar a su esposo a suscribir las escrituras; (6) la peticionaria manifestó en una deposición que no llevaría a su esposo porque ella no estaba de acuerdo con el contenido del *Acuerdo de herederos*; y (7) según declaró la señora Reyes Montañez, su posición persistiría porque no permitiría que su esposo firmara. A esto se añade que, incluso, la peticionaria admitió en una deposición que en ciertos momentos llegó a firmar por Don José Batista por medio de un *Poder*.[2] La adjudicación de estos hechos materiales es una tarea mejor servida por el foro de primera instancia, especialmente al considerar los elementos subjetivos de culpa e intención de

---

[1] Véase *Apéndice del Certiorari*, pág. 301, línea 12.

[2] Íd., pág. 339, línea 8, a la pág. 340, línea 19.

la interferencia culposa y la situación de salud de Don José Batista.

En vista de las circunstancias de este caso, las declaraciones de la señora Reyes Montañez podrían constituir admisiones de interferencia torticera con las obligaciones contractuales de su esposo o, como mínimo, deberían sugerir suficiente controversia de hechos como para evitar la disposición sumaria de la causa de acción. En ese sentido, también discrepo de lo expuesto en la *Opinión mayoritaria* referente a que "[e]l foro primario concluyó que no existían controversias de hechos materiales porque no surgía evidencia adicional que pudiese controvertir los hechos bien alegados".

En primer orden, de un examen de la escueta *Sentencia sumaria* del Tribunal de Primera Instancia no se desprende que esa fuera la razón por la que determinó que no existían controversias de hechos materiales. De hecho, esta expresión asume que el foro primario fundamentó su *Sentencia* de alguna forma, cuando no lo hizo. Así, el dictamen del foro primario se limitó a declarar ha lugar la solicitud de la señora Reyes Montañez y a desestimar la causa de acción. Ello, a pesar de la *Oposición* reseñada en este disenso, la cual contiene declaraciones que ameritaban denegar la solicitud de sentencia sumaria.

En segundo orden, en el pasado hemos reconocido que la sentencia sumaria no es el mecanismo apropiado para resolver casos en los que existen elementos subjetivos de intención,

propósito mental, negligencia o cuando el factor de credibilidad resulta esencial. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton,* 137 DPR 294 (1994). También, hemos plasmado que hay litigios que por su naturaleza no hacen deseable su atención sumaria por la dificultad de que el Tribunal pueda reunir ante sí toda la verdad de los hechos mediante declaraciones juradas o deposiciones. *Elías y otros v. Chenet y otros*, *supra*, citando a *García López v. Méndez García,* 88 DPR 363, 380 (1963).

Sin embargo, la *Opinión mayoritaria* obvia esta normativa y escoge otro camino. Al hacerlo, se precipita al dictaminar que los elementos subjetivos de este caso no son óbice para emplear la sentencia sumaria porque de los documentos considerados surge la inexistencia de controversia sobre hechos materiales. Como he expuesto, esa no es la situación que nos ocupa. Al contrario, el expediente de este caso cuenta con documentos que evidencian la existencia de controversia sobre asuntos medulares para la adjudicación de la causa de acción promovida por la señora Batista Valentín.

Adviértase, además, que la *Opinión mayoritaria* minimiza la conducta de la señora Reyes Montañez como meras objeciones o aseveraciones en futuro. Sin embargo, la prueba ofrecida por la recurrida arroja acciones y omisiones concretas que no permiten superar tan livianamente la controversia de

hecho de si ocurrió o no la interferencia imputada. Ante ese cuadro, no puedo descartar de plano esa conducta y tampoco unirme a la conclusión mayoritaria de que la cónyuge no es parte del *Acuerdo de herederos*, que los únicos obligados a dar cumplimiento son los suscribientes y que no existía prueba de que la señora Reyes Montañez actuó culposamente.

No menos preocupante, la mayoría empequeñece las acciones y omisiones de la peticionaria al resolver que no le corresponde pasar juicio sobre las opiniones y meras manifestaciones de un cónyuge con respecto a la actuación de otro, pues, hacerlo sería una intromisión caprichosa e injustificada y una interpretación errónea del derecho. En otros contextos, como por ejemplo, dirigidos a proteger la intimidad en un matrimonio, sería aplicable esa contención, pero, en el marco de esta controversia, resulta necesario aquilatar en su justa perspectiva la conducta del cónyuge que presuntamente impide que se cumpla una obligación contractual. Reitero que, dado el aparente alto grado de control que la señora Reyes Montañez tenía sobre los diversos aspectos de la vida cotidiana y la toma de decisiones de Don José Batista, el ejercicio de determinar si existen hechos medulares en controversia en nada constituye una intromisión caprichosa. Todo lo contrario. Se trata del desempeño más básico de la función judicial de adjudicar.

Igualmente, las múltiples declaraciones juradas que obran en el expediente y las diversas manifestaciones de la señora Reyes Montañez en su deposición arrojan dudas sobre

las determinaciones que suscribe la mayoría. En específico, despiertan interrogantes sobre si Don José Batista no firmó porque estaba enfermo, si la señora Batista Valentín contaba con prueba suficiente para demostrar interferencia culposa por parte de la peticionaria y si la señora Reyes Montañez tenía alguna obligación adicional a la de cuidar.

Respecto a esto último, la *Opinión mayoritaria* se precipita al resolver que no hay evidencia para concluir que la peticionaria tenía una obligación adicional a la de cuidar y apercibir a Don José Batista. Esa conclusión está en evidente contradicción con las propias admisiones de la señora Reyes Montañez de que su esposo dependía de ella. Dadas esas circunstancias, la negación de llevarlo a una cita, las promesas de no permitirle a otras personas tener acceso a su cónyuge y la férrea oposición de la peticionaria a otorgar las escrituras podrían consistir en una interferencia culposa con las obligaciones contraídas por su esposo. Sobre estos asuntos, relacionados con los elementos de la interferencia culposa, existe genuina controversia. Descifrar una respuesta a ello es una función mejor atendida por el Tribunal de Primera Instancia mediante el juicio en sus méritos, en lugar de las apresuradas conclusiones de la mayoría.

En resumen, existen dudas legítimas en torno a si estamos ante meras objeciones de un cónyuge o si realmente hubo una interferencia culposa por parte de la señora Reyes Montañez. Respetuosamente, opino que esta no era la etapa

procesal ni la controversia idónea para que este Tribunal determinara que las meras objeciones de una cónyuge que no contrató no son suficientes para determinar que interfirió culposamente con un contrato suscrito por su esposo. Ello, por existir controversia de hechos sobre si la señora Reyes Montañez interfirió con él, de forma culposa, causando un daño.

Aunque la *Opinión mayoritaria* concluye lo contrario, hay declaraciones juradas y transcripciones de la deposición de la peticionaria que sugieren que ella estaba encargada del cuidado de Don José Batista, que le daba transporte, que él dependía de ella y que, en al menos una ocasión, según admitió, se negó a llevarlo a firmar la escritura acordada. A esto se suman las distintas manifestaciones de que no llevaría a Don José Batista a firmar o de que no permitiría que firmara. Asimismo, persiste duda sobre la extensión de la incapacidad física y mental de Don José Batista y el efecto de su condición de salud en su incumplimiento y en los deberes de la señora Reyes Montañez.

Por las razones expuestas, respetuosamente disiento.


                                        Luis F. Estrella Martínez
                                        Juez Asociado