Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LUIS ALFREDO HERNÁNDEZ GONZÁLEZ, ANA GANDÍA TORRES, en su carácter personal y como sociedad de gananciales<br><br>Apelantes<br><br>v.<br><br>DR. SUSONI HEALTH COMMUNITY SERVICES CORP. D/B/A HOSPITAL PAVÍA ARECIBO y otros<br><br>Apelados | TA2025AP00314 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2023CV00859<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de octubre de 2025.

Comparece ante nos Luis Alfredo Hernández González ("señor Hernández"), Ana Gandía Torres ("señora Gandía") y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "los Apelantes") mediante *Apelación* presentada el 6 de septiembre de 2025. Nos solicitan la revocación de la *Sentencia* dictada el 2 de septiembre de 2025, notificada el 3 de septiembre del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Arecibo ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* las mociones de sentencia sumaria presentadas por el Dr. José Vega Martínez ("Dr. Vega") y Dr. Susoni Health Community Services Corp. d/b/a Hospital Pavía Arecibo ("Hospital"). En consecuencia, desestimó con perjuicio la demanda incoada por los Apelantes por insuficiencia de prueba.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

## I.

El 10 de mayo de 2023, los Apelantes presentaron *Demanda* sobre daños y perjuicios contra el Dr. Vega, el Hospital, Metro Pavía Health System, Metro Pavía Hospital Group, LLC y una serie de demandados de nombre desconocido.[1] Mediante esta, alegaron que el señor Hernández, quien es diabético, fue referido por el Dr. José Rivera Carrasquillo al gastroenterólogo, Dr. Vega, para una colonoscopía. Arguyeron que dicho procedimiento se pautó para el 12 de mayo de 2022 en el Hospital. Detallaron que, siguiendo las instrucciones del Dr. Vega, el señor Hernández acudió el día de la cita al Hospital a las 6:00 a. m. en ayuna. No obstante, sostuvieron que el señor Hernández fue atendido a eso de las 9:20 a. m. por el personal del Hospital para someterse al procedimiento de colonoscopia.

Los Apelantes abundaron que, cuando llamaron al señor Hernández para comenzar con el procedimiento, este notificó al personal del Hospital y al Dr. Vega que llevaba en ayuna desde las 4:00 p. m. del día anterior, que se sentía mareado y que padecía de diabetes. No empece a lo anterior, adujeron que el personal del Hospital y el Dr. Vega continuaron con el procedimiento sin tomar medida cautelar alguna para atender su condición.

Cónsono con lo antes expuesto, los Apelantes esbozaron que el personal del Hospital le requirió al señor Hernández que pasara a una pequeña habitación para prepararse para el estudio. Señalaron que le solicitaron al señor Hernández que se desvistiera, se pusiera una bata y se colocara unas medias especiales de seguridad. Ante

---

[1] Véase, SUMAC TPI, Entrada 1. Cabe mencionar que, 19 de septiembre de 2024, el foro primario dictó *Sentencia Parcial de Desistimiento,* en la que se ordenó el archivo con perjuicio de la *Demanda* en cuanto a Metro Pavía Health System Inc. y Metro Pavía Hospital Group, LLC. Véase, SUMAC TPI, Entrada 72.

esto, los Apelantes afirmaron que el señor Hernández le comentó al personal del Hospital que, para ponerse las medias entregadas, este debía quitarse las que llevaba puestas y que se le hacía difícil doblarse en las condiciones en que se encontraba. Enfatizaron, además, que pese a este reclamo, el personal del Hospital insistió en que debía ponerse las medias entregadas. Al respecto, los Apelantes destacaron que, en el momento en que el señor Hernández se dispuso a ponerse las aludidas medias, "perdió el conocimiento" y se cayó frente al Dr. Vega y al personal del Hospital.

Como corolario de lo anterior, los Apelantes subrayaron que el señor Hernández "como consecuencia de la abrupta caída, recibió múltiples traumas severos en diversas partes del cuerpo, específicamente en su mano izquierda, rostro, cabeza, brazo izquierdo y costillas lo que le provocó daños físicos e intensos sufrimientos y angustias mentales".[2] Adujeron que al señor Hernández se le implantaron tornillos y placas en su mano izquierda y que perdió movilidad y funcionalidad de su mano, particularmente en los dedos. Ante este cuadro, el señor Hernández solicitó una indemnización de ciento cincuenta mil dólares ($150,000.00) por daños físicos; cien mil dólares ($100,000.00) por daños emocionales; cien mil dólares ($100,000.00) por sufrimientos y angustias mentales y diez mil dólares ($10,000.00) por la cancelación de una colonoscopia luego de haberse preparado mental, emocional y físicamente para dicho procedimiento. De igual forma, la señora Gandía solicitó una indemnización de cincuenta mil dólares ($50,000.00) por sufrimientos y angustias al ver su esposo parcialmente incapacitado.

En respuesta, el 3 de agosto de 2023, el Hospital presentó *Contestación a Demanda.*[3] Esencialmente, por virtud de este escrito,

---

[2] Véase, SUMAC TPI, Entrada 1, pág. 3.
[3] Véase, SUMAC TPI, Entrada 12.

negó algunas de las alegaciones contenidas en la demanda y levantó varias defensas afirmativas. Por su parte, el 25 de agosto de 2023, el Dr. Vega presentó *Contestación a Demanda*,[4] en la que, de igual forma, negó ciertas alegaciones y levantó las correspondientes defensas afirmativas.

Tras varios trámites procesales, el 23 de julio de 2025, las partes presentaron *Informe Preliminar Entre Abogados (Regla 37.4)*.[5] Por virtud de este escrito, las partes elaboraron sus respectivas teorías del caso e identificaron la prueba que pretendían utilizar en el juicio. En particular, los Apelantes anunciaron que usarían como prueba documental el expediente médico del señor Hernández, el *curriculum vitae* del Dr. Ramón Malavé Vélez ("Dr. Malavé" o "perito"), a quien anunciaron como perito. Consta en el aludido informe que este declararía "sobre la totalidad del expediente del demandante, incapacidad, su condición física y medicación".[6] Además, presentarían como prueba el testimonio de los propios Apelantes.

Así pues, el 23 de julio de 2025, el Dr. Vega presentó *Moción de Sentencia Sumaria*.[7] En esta esgrimió que, tras concluirse el descubrimiento de prueba, no existía evidencia que demostrara que procediera la causa de acción instada por los Apelantes. En concreto, arguyó que "en su deposición el Dr. Malavé, perito de la parte demandante, bajo juramento estableció de manera clara y precisa, que no tiene alegaciones de impericia médica contra el Dr. José M. Vega Martínez y que no va a hacer alegaciones de impericia médica contra este, si tuviera que testificar en un juicio".[8] Por ello, el Dr. Vega razonó que las alegaciones de negligencia que

---

[4] Véase, SUMAC TPI, Entrada 21.
[5] Véase, SUMAC TPI, Entrada 89.
[6] Véase, SUMAC TPI, Entrada 89, pág. 25.
[7] Véase, SUMAC TPI, Entrada 88.
[8] Véase, SUMAC TPI, Entrada 88, pág. 5.

pesaban en su contra eran infundas y, por consiguiente, correspondía desestimar la causa de acción instada en su contra.

En lo que respecta a los Apelantes, el 24 de julio de 2025, presentaron *Oposición a Solicitud de Sentencia Sumaria.*[9] En síntesis, esbozaron que en el presente caso existían hechos materiales en controversia que impedían la resolución del pleito por la vía sumaria. En fin, adujeron que las disputas relacionadas a negligencia, como regla general, no debían resolverse por la vía sumaria y sostuvieron que el Dr. Vega tenía la obligación de haber tomado medidas razonables para evitar la caída que provocó los daños de su paciente, el señor Hernández.

Acto seguido, el 24 de julio de 2024, el Hospital presentó *Moción de Sentencia Sumaria.*[10] En lo pertinente, puntualizó que, en ausencia de prueba pericial que sostuviera la alegación sobre negligencia del personal de enfermería, de apoyo y médicos del Hospital, resultaba forzoso concluir que no se configuró el elemento de negligencia que los Apelantes le imputaron a esta parte. En respuesta a este escrito, en igual fecha, los Apelantes presentaron *Oposición a Solicitud de Sentencia Sumaria.*[11] Al amparo del presente escrito, aludieron que es norma reiterada que las disputas sobre negligencia no deben, de ordinario, adjudicarse por la vía sumaria, sino que corresponde resolver en un juicio plenario. Agregaron que, en el caso de epígrafe, existen controversias genuinas de hechos materiales, por lo que no procedía que se dictara sentencia sumaria a favor del Dr. Vega y el Hospital. En lo atinente, especificaron que existe una controversia genuina sobre el hecho de la negligencia, particularmente si era previsible que el señor

---

[9] Véase, SUMAC TPI, Entrada 90.
[10] Véase, SUMAC TPI, Entrada 91.
[11] Véase, SUMAC TPI, Entrada 93.

Hernández se cayera y si el Hospital actuó de forma prudente y razonable.

Así las cosas, el 5 de agosto de 2025, se llevó a cabo la Vista sobre el Estado de los Procedimientos.[12] Se desprende de la *Minuta* de esta vista que las partes abundaron sobre el estatus del caso. En lo concerniente, los Apelantes manifestaron que el descubrimiento de prueba había culminado y que aún se encontraban pendientes de adjudicación las mociones de sentencia sumaria que obraban en el expediente. Por otra parte, tanto el Dr. Vega como el Hospital, puntualizaron que la *Demanda* expone alegaciones de impericia médica en su contra, por lo tanto, manifiestan su interés en que se resuelvan las mociones de sentencia sumaria incoadas por estos en el caso de epígrafe.

Considerados los argumentos de las partes, el 2 de septiembre de 2025, notificada al día siguiente, el foro primario emitió *Sentencia.*[13] Por virtud de esta, formuló las siguientes determinaciones de hechos incontrovertidos:

> 1. El 10 de mayo de 2023, la parte demandante presentó una Demanda alegando negligencia médica de parte del Dr. Vega y el Hospital Pavía Arecibo por los daños sufridos por el paciente, Luis A. Hernández González.
> 2. El Dr. Ramón Francisco Malavé Vélez, perito de la parte demandante, presentó su informe pericial el 4 de diciembre de 2024.
> 3. En su informe pericial, el Dr. Malavé no realizó imputaciones de negligencia médica ni de responsabilidad profesional en contra el Dr. Vega, Hospital Pavía Arecibo, ni el personal médico, de enfermería o de apoyo.
> 4. En el informe pericial del Dr. Malavé se limitó a realizar una evaluación de daños y el porciento de incapacidad del demandante, sin establecer estándares de cuidado médico ni desviaciones al estándar de cuidado.
> 5. En la deposición, tomada el 21 de febrero de 2025, el Dr. Malavé declaró, bajo juramento que en su informe pericial no realizó imputaciones de responsabilidad en contra del Dr. Vega, Hospital Pavía Arecibo, ni el personal médico, de enfermería o de apoyo.

---

[12] Véase, SUMAC TPI, Entrada 99.
[13] Véase, SUMAC TPI, Entrada 100.

6. En su deposición del 21 de febrero de 2025, bajo juramento el Dr. Malavé expresó que no tenía alegaciones de impericia médica contra del Dr. Vega, Hospital Pavía Arecibo, ni el personal médico, de enfermería o de apoyo, y que en el juicio no testificaría sobre impericia médica.

7. El Dr. Malavé declaró bajo juramento que su informe pericial es una evaluación del porciento de incapacidad del paciente por los hechos alegados.

8. El Dr. Malavé testificó que su informe era final y firme.

9. El Dr. Malavé es el único perito anunciado por la parte demandante.

10. La parte demandante no ha presentado prueba pericial que sustente las alegaciones de negligencia médica en contra del Dr. Vega, Hospital Pavía Arecibo, ni el personal médico, de enfermería o de apoyo de este.[14]

Cónsono con estas determinaciones de hecho, el foro primario concluyó que los Apelantes no cumplieron con los elementos necesarios para establecer la existencia de una reclamación en contra del Dr. Vega y del Hospital al amparo de los Artículos 1536 y 1540 del Código Civil de Puerto Rico, 31 LPRA secs. 10801 y 10805, los cuales versan sobre responsabilidad civil extracontractual y responsabilidad vicaria. En esa dirección, razonó el foro primario que los Apelantes carecían de prueba suficiente "ya que su propio perito bajo juramento fue enfático a los fines de que no iba a realizar imputaciones de impericia médica contra los demandados, y que tampoco lo haría si tuviese que testificar en un juicio".[15] Del mismo modo, el foro *a quo* destacó que, tras culminarse el descubrimiento de prueba, no existía controversia de que los Apelantes no contaban con evidencia alguna para sostener que, tanto el Dr. Vega, los médicos, ni los empleados del Hospital fueron negligentes. Debido a estas circunstancias, el foro primario declaró *Ha Lugar* las mociones de sentencia sumaria presentadas por el Dr. Vega y el Hospital y, en consecuencia, desestimó con perjuicio, la demanda incoada por los Apelantes.

---

[14] Véase, SUMAC TPI, Entrada 100, pág. 4.
[15] Véase, SUMAC TPI, Entrada 100, pág. 12.

Inconformes con este resultado, el 6 de septiembre de 2025, los Apelantes presentaron el recurso de epígrafe y formularon el siguiente señalamiento de error:

> Erró el TPI al declarar con lugar las solicitudes de sentencia sumaria fundamentado en que "culminado el descubrimiento de prueba, resulta forzoso concluir que no existe controversia a los fines de establecer que la parte demandante no cuenta, luego de 1 (un) año y 11 meses de haberse radicado la Demanda, con la prueba necesaria, para probar la existencia de negligencia médica contra el Dr. Vega y el Hospital Pavía Arecibo. Más aun, no va a tener esa prueba al momento en que se vaya a juicio pues ya el descubrimiento de prueba terminó y su perito claramente estableció que no va a hacer alegaciones de responsabilidad profesional contra el Dr. Vega ni el Hospital Pavía. Dicha prueba resultaba ser imprescindible para mantener viva su causa de acción y derrotar en consecuencia las mociones dispositivas presentadas por ambos demandados, sin embargo, no se hizo".

El 9 de septiembre de 2025, esta Curia emitió *Resolución* mediante la cual le concedió a la parte apelada hasta el 8 de octubre de 2025 para que presentara su postura. Oportunamente, el 7 de octubre de 2025, el Dr. Vega presentó *Alegato de la parte Apelada* y el 8 de octubre del mismo año, el Hospital presentó *Alegato de la Parte Apelada.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### *A. Sentencia Sumaria*

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 215 DPR ___ (2025), 2025 TSPR 3, pág. 10. Véase, además, *BPPR v. Cable Media,* 215 DPR ___ (2025), 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea

sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers*, supra.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra,*

pág. 118. "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023), citando a *Meléndez González et al. v. M. Cuebas*, *supra*.

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp., et als.,* supra*,* 215 DPR ___ (2025), 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Ahora bien, el Tribunal Supremo de Puerto Rico ha determinado que "no existe impedimento alguno para que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran

elementos subjetivos o de intención, cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales." *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 216 DPR __ (2025), 2025 TSPR 93, pág. 10. En vista de ello, "la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular" (citas omitidas). *Íd.*

De igual forma, en nuestra jurisdicción se ha reconocido la sentencia sumaria en modalidad de insuficiencia de prueba. *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 732 (1994). Esta modalidad opera de la siguiente manera: "después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria, alegando la insuficiencia de prueba por parte del promovido". *Íd.* Asimismo, el promovente de esta solicitud tiene que poner al tribunal en posición de evaluar que el descubrimiento de prueba realizado haya sido adecuado hasta ese momento y, debe demostrar que el promovido no cuenta con evidencia suficiente. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 447 (1999). Cónsono con lo anterior, la parte promovente debe demostrar que la parte promovida no cuenta con evidencia admisible suficiente para probar, al menos un elemento esencial indispensable para su caso. *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010).

En fin, esta modalidad establece que: "(1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación, y (3) como cuestión de derecho, procede la desestimación de la reclamación". *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 786 (2016).

### B. Responsabilidad Civil Extracontractual

En nuestro ordenamiento jurídico, "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo".

Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801 (Supl. 2025). De esta forma, una causa de acción por daños requiere que se demuestren tres (3) requisitos esenciales: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023).

En sintonía con lo anterior, en una causa de acción en daños, la parte promovente tiene el deber de evidenciar que entre el acto culposo o negligente y el daño sufrido existe un nexo causal adecuado. *Íd.* Lo previamente esbozado es lo que en nuestra jurisdicción se conoce como la doctrina de la causalidad adecuada. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 484-485 (2022). Conforme a esta doctrina, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general" (cita y escolio omitido). *Íd.*, pág. 485. Por tanto, para que surja el elemento de nexo causal, "debe de existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado". *Íd.*

En armonía con lo anterior, para que exista responsabilidad como consecuencia de una omisión hay que considerar: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Siaca v. Bahia Beach Resort*, 194 DPR 559, 606 (2016).

Ahora bien, el concepto de daño se entiende como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *Sagardia De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 505 (2009).

En ese sentido, nuestro más Alto Foro ha explicado la división que existe entre los daños patrimoniales y los no patrimoniales. *Íd.* El daño patrimonial es aquel menoscabo valorable en dinero sobre el patrimonio de la persona que ha sido perjudicada. *Íd.*, pág. 506. Por otro lado, el daño no patrimonial es aquel que en principio "no tiene base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria". *Íd.*, citando a J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. III, pág. 460.

De igual forme, el Tribunal Supremo de Puerto Rico ha aclarado que la responsabilidad civil extracontractual por impericia médica tradicionalmente se impone por la culpa o negligencia de un facultativo médico según emana del Artículo 1536 del Código Civil de Puerto Rico, *supra*. Véase, *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 487-488. Ello se fundamenta en la norma mínima de cuidado médico exigible a la luz de los medios de comunicación y enseñanza, y "conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, que satisfacen las exigencias generalmente reconocidas por la profesión" (Énfasis suprimido). *Íd.*, pág. 488. En armonía con lo anterior, nuestro Máximo Foro también ha reconocido que "las instituciones hospitalarias tienen el deber de ofrecer el grado de cuidado que ejercería un hombre prudente y razonable en circunstancias similares". *Íd.*

### III.

En el caso que nos ocupa, los Apelantes nos solicitan que revoquemos la *Sentencia* dictada por el foro primario el 2 de septiembre de 2025, notificada al día siguiente. En su único señalamiento de error, sostienen los Apelantes que el foro *a quo* incidió al desestimar la *Demanda* instada por estos, por el fundamento de insuficiencia de prueba para probar la existencia de negligencia contra el Dr. Vega y el Hospital. Veamos.

De entrada, es menester destacar que, dado a que el recurso de epígrafe versa sobre la revisión de un dictamen resuelto por la vía sumaria, le corresponde a este foro revisor realizar un examen *de novo*, tanto de las solicitudes de sentencia sumaria presentadas y sus anejos, así como de las oposiciones instadas. Efectuado el análisis correspondiente, resolvemos que todas las partes cumplieron esencialmente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra*.

Atendido lo anterior, nos corresponde determinar si existen hechos materiales en controversia que impidan la resolución sumaria de la controversia ante nos. En esencia, de así determinarlo, se expondrán los hechos controvertidos y los que no se encuentran en controversia. Tras realizar un análisis minucioso del expediente del caso, el cual incluye los documentos y la deposición anejada a las solicitudes de sentencia sumaria, así como los escritos en oposición, **colegimos que no existen hechos materiales en controversia**. Con lo anterior expuesto, **adoptamos las determinaciones de hechos formuladas por el foro primario como hechos materiales incontrovertidos**.

Ante este cuadro, corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia que nos ocupa. De esta manera, procedemos a evaluar si procedía desestimar la causa de acción interpuesta por los Apelantes, por éstos no tener prueba suficiente para demostrar su causa de acción. En nuestro ordenamiento, se permite presentar una solicitud de sentencia sumaria por insuficiencia de prueba. Véase, *Medina v. M.S. & D. Química P.R., Inc.*, *supra*. Para que una parte que promueva este tipo de solicitud prevalezca, debe satisfacer tres (3) requisitos. Debe demostrar que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación, y (3) como

cuestión de derecho, procede la desestimación de la reclamación. *Rodríguez Méndez v. Laser Eye, supra,* pág. 786.

Asimismo, "es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba adecuado y debe quedar demostrado que, una vez este concluye, la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción". *Íd.*, pág. 787.

El presente caso versa sobre una causa de acción en daños y perjuicios contra el Dr. Vega y el Hospital. En concreto, los Apelantes alegaron en su demanda que los daños sufridos por el señor Hernández, "se produjeron como consecuencia de la **negligencia solidaria** de PAVÍA HOSPITAL ARECIBO y del Dr. José M. Vega Martínez, o DR. ZUTANO al mantener a un paciente sin supervisión, sin protección, atención, seguridad, cuidado y control por un amplio periodo de tiempo, conociendo su condición de diabetes tipo II, que hacía previsible que el demandante se mareara y cayera" (Énfasis nuestro).[16]

Tras culminar el descubrimiento de prueba, las partes sometieron un Informe de Conferencia con Antelación a Juicio en el cual se desprende que los Apelantes presentarían la siguiente prueba en el juicio:

> G. RELACION DETALLADA DE LA PRUEBA DOCUMENTAL IDENTIFICADA CUYA ADMISION EN EVIDENCIA NO EXISTA CONTROVERSIA: PARTE DEMANDANTE:
>
> 1. La totalidad del expediente médico del demandante.
> 2. Curriculum vitae del [D]r. Ramón Malavé[.]
>
> [...]
>
> I. LISTA DE CADA PARTE CON LOS NOMBRES Y DIRECCIONES DE LAS PERSONAS TESTIGOS O PERITOS DE OCURRENCIA QUE TESTIFICARÁN EN EL JUICIO INCLUYENDO UN RESUMEN DE SU TESTIMONIO:

---

[16] Véase, SUMAC TPI, Entrada 1, pág. 3.

DEMANDANTE: Ambos demandantes.

[...]

J. LISTA DE CADA PARTE DE LOS NOMBRES DE LOS PERITOS QUE TESTIFICARÁN EN EL JUICIO, INCLUYENDO UN RESUMEN DE SU TESTIMONIO:
PARTE DEMANDANTE:
Perito:

1. Dr. Ramón Malavé – Declarará sobre la totalidad del expediente del demandante, incapacidad, su condición física y medicación.[17]

Como se percibe, los Apelantes únicamente anunciaron a un perito, el Dr. Malavé, quien rindió un informe pericial y fue sometido a una deposición.  En dicha deposición, llevada a cabo el viernes, 21 de febrero de 2025, a preguntas de la representación legal del Dr. Vega, el Dr. Malavé declaró lo siguiente:

P. Okey.  Muy bien.  Y viendo el informe pericial que usted rindió de fecha 4 de diciembre del 2024, en este informe pericial **usted no hace ninguna alegación de responsabilidad profesional o impericia médica contra algún médico.**
**R. No.**
P. No la hace, ¿verdad que no?
R. No.
P. **Y este informe no lo va a enmendar para incluir alegaciones de impericia médica o responsabilidad profesional contra algún médico.**
**R. Este sería el informe final y firme.**
**P. Okey.  Por ende, debo entender que usted no lo va a enmendar para hacer alegaciones contra un médico por responsabilidad profesional o impericia médica, ¿verdad que no?**
**R. Este es mi informe final y firme.**
**P. Okey.  Pero no lo va a enmendar, ¿verdad que no, Doctor?**
**R. Al momento no es la opción. Como le contesté a la Licenciada, no** hay planes de enmendarlo.
P. Okey (Énfasis nuestro).[18]

Asimismo, a preguntas de la representación legal del Hospital, el Dr. Malavé explicó lo siguiente:

P. De la mima [sic] forma, Doctor, usted no hace una imputación de impericia médica con relación al Hospital Pavía de Arecibo.  ¿Mi entendimiento es correcto?
**R. Mi contestación es que mi informe es el informe médico evaluando el expediente médico del paciente e informando el porciento de incapacidad**

---

[17] Véase, SUMAC TPI, Entrada 89, págs. 21, 23, 24-25.
[18] Véase, SUMAC TPI, Entrada 91, Anejo: Transcripción Deposición, pág. 23 líneas 15-24 – pág. 23 líneas 1-12.

**que tiene este paciente a consecuencia de la situación que presentó médica ese día, en mayo del 22.**

**P Entiendo.**

**R. El alegamiento [sic] hacia lo que viene la parte legal, no corresponde a mi informe.**

**P. Así que su informe pericial es uno de daños, no es uno de negligencia, ¿correcto?**

**R. Es un informe del porciento de incapacidad, del daño permanente que recibió el paciente.**

P. Okey.   Así que usted no tiene imputación de negligencia médica con relación al Hospital Pavía Arecibo, ¿correcto?

R. Yo no tomo decisión en el informe de quién tiene negligencia o quién no.  Yo estoy informando ahí lo que le sucedió al paciente, dónde le sucedió y cuáles son sus daños permanentes (Énfasis nuestro).[19]

Nótese que la prueba pericial propuesta por los Apelantes **no demuestra uno de los elementos esenciales en una causa de acción de daños y perjuicios, la negligencia.**  Ello, ciertamente tiene el efecto de que la celebración de un juicio se torne innecesaria.  Lo anterior responde a que, conforme la prueba que los Apelantes anunciaron, éstos no cuentan con evidencia a los fines de demostrar la alegada negligencia incurrida por el Dr. Vega y el Hospital al mantener a un paciente diabético, alegadamente sin supervisión, por un periodo de tiempo prolongado, siendo alegadamente la causa de los mareos y su caída.

En armonía con lo anterior, es preciso resaltar que, conforme se desprende del expediente, los Apelantes tuvieron un descubrimiento de prueba amplio.  Ante este cuadro, y tras haber realizado un estudio minucioso de las mociones de sentencia sumaria, sus anejos y las oposiciones a estas, es forzoso concluir que los Apelantes **no presentaron prueba suficiente para demostrar su causa de acción, pues no tienen evidencia que exponga con suficiencia la alegada negligencia incurrida por el Hospital y el Dr. Vega en torno a los daños sufridos por el señor Hernández**.  A tono con los criterios previamente discutidos, como

---

[19] Véase, SUMAC TPI, Entrada 91, Anejo: Transcripción Deposición, pág. 25, líneas 1-24.

cuestión de derecho, corresponde desestimar la demanda. Por tanto, colegimos que el error esgrimido por los Apelantes no se cometió, por lo que procede confirmar la sentencia apelada.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones