ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DIEGO J. LOINAZ MARTÍN  Peticionario  v.  ERNESTO ARROYO LÓPEZ  Recurrido | TA2025CE00158 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Caso Núm. SJ2023CV05579  Sobre: Desahucio y Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Diego J. Loinaz Martín (Peticionario o Loinaz Martín), solicita la revisión de la *Resolución* que emitió el Tribunal de Primera Instancia, Sala de San Juan el 30 de mayo de 2025. Mediante esta, el foro primario declaró *No Ha Lugar* la Solicitud de Sentencia Sumaria que presentó Loinaz Martín, por existir hechos en controversia.

Evaluado el recurso, modificamos la determinación de hechos diecinueve (19) y lo demás se confirma.

## I.

El 9 de junio de 2023 Ernesto Arroyo López, presentó una demanda de desahucio en precario contra Diego J. Loinaz Martín. El demandante alegó que era dueño de la propiedad ubicada en el 1883 Glasgow Ave., Esquina Upsala 258 en San Juan, Puerto Rico. Adujo que el 1 de enero de 2014, las partes otorgaron un Contrato de Arrendamiento y Opción a Compra para la referida propiedad por un término de un (1) año, desde el 1ro de enero de 2014 al

1ro de enero de 2015. Indicó que el canon mensual era de dos mil seiscientos dólares ($2,600.00), con un cargo por mora de veinticinco dólares ($25.00) por pago atrasado por mes; más el depósito. Indicó que el término del contrato era anual, renovándose por previa notificación al arrendador. Arguyó que Loinaz Martín solicitó que se le redujera la renta a dos mil dólares ($2,000.00) por un período de cuatro (4) meses (septiembre, octubre, noviembre y diciembre del año 2020). Señaló que se le contestó que se haría la concesión por esos cuatro (4) meses, reduciendo el canon a dos mil trescientos dólares ($2,300.00). Manifestó que Loinaz Martín incumplió el acuerdo de renta, pues de forma unilateral, redujo el pago de renta a dos mil dólares ($2,000.00) mensuales desde el mes de septiembre del 2020 hasta febrero del 2022. Señaló que el 2 de agosto de 2022, le requirió al demandado la totalidad de lo adeudado, pero el demandado continuó haciendo pagos incompletos. Que envió una segunda comunicación para informarle que el contrato no sería renovado, entre otras cosas. Mencionó que el demandado realizó varios pagos, los que fueron recibidos bajo protesta, por ser por una cantidad menor a la establecida. Manifestó que la parte demandada había realizado varios pagos, luego de haber sido requerido su cumplimiento, a saber: pago de trece mil ochocientos dólares ($13,800.00) acreditados al balance adeudado; pagos de renta para los meses de septiembre y octubre del 2022 por dos mil trescientos dólares ($2,300.00) cada uno; y pagos de renta para los meses de noviembre del 2022 a junio del 2023 por dos mil seiscientos dólares ($2,600.00). Sostuvo que los referidos pagos de renta fueron aceptados, bajo protesta, por ser una cantidad menor a la establecida, para no seguir aumentando el balance en atraso de la parte demandada. Señaló que la deuda

acumulada era de veintiséis mil dólares ($26,000.00) por concepto de renta no recibida y ochocientos cincuenta dólares ($850.00) por cargos por mora.[1]

El 14 de julio de 2023, Loinaz Martín contestó la demanda. En general, alegó que el contrato fue renovado el 1 de enero de 2021, debido a que llevaba cinco (5) meses pagando mensualidades de dos mil dólares ($2,000.00). Indicó que durante más de diecisiete (17) meses (septiembre del 2020 hasta marzo del 2022), pagó al demandante una renta mensual de dos mil dólares ($2,000.00) sin que el demandante objetara los pagos, por lo que entendió que el demandante había consentido a la modificación del canon de arrendamiento. Adujo que cumplió con los términos y condiciones del contrato según quedó modificado por la conducta de las partes y el consentimiento implícito o tácito del demandante. Manifestó que recibió la carta del 2 de agosto de 2022, y que partir de noviembre del 2022, hasta el presente ha pagado dos mil seiscientos dólares ($2,600.00) mensuales. Adujo que el demandante no tiene justa causa para dar por terminado el contrato y que la facultad de renovarlo recae exclusivamente en el arrendatario. Alegó que el demandante le debe reembolsar los gastos que exceden los quince mil dólares ($15,000.00), por reparaciones necesarias realizadas al inmueble. Señaló que tiene derecho a comprar la propiedad por trescientos cincuenta mil dólares ($350,000.00), pues la opción está vigente mientras el contrato de arrendamiento también lo esté.

El caso continuó por la vía ordinaria, a tenor con la orden emitida el 29 de septiembre de 2023. El 29 de agosto de 2024, la parte demandada le tomó una deposición a la señora Gloria

---

[1] SUMAC TA, Apéndice 1.

Ortiz Irizarry, y el 10 de septiembre de 2024 ocurrió la deposición del demandado Loinaz Martín.

Luego de otros trámites, el 10 de enero de 2025, Loinaz Martín presentó una *Solicitud de Sentencia Sumaria*.[2] En esencia, alegó que no procedía la acción de desahucio en precario, ya que, entre otras defensas, a la presentación de la Demanda se encontraba al corriente en los pagos de renta. Sostuvo que durante la vigencia del Contrato de Arrendamiento ejerció válidamente su derecho a opción de compra y el demandante se negó injustificadamente. Solicitó que se desestimara la demanda de desahucio.

El 25 de febrero de 2025, el demandante Arroyo Pérez presentó una *Moción en Oposición a la Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a favor de la parte Demandante*.[3] En síntesis, adujo que el 1ro de septiembre de 2020, el demandado le envió una comunicación para proponer reducir el canon de arrendamiento a dos mil dólares ($2,000.00) mensuales por cuatro (4) meses, porque su volumen de negocios se había reducido, con la esperanza de que para el 31 de diciembre de 2020 la operación de la oficina se estabilizara y regresaba a la renta de dos mil seiscientos dólares ($2,600.00) mensuales. Indicó que el demandante respondió con una propuesta para reducir la renta a dos mil trescientos dólares ($2,300.00) y se puso a la disposición de dialogar para "llegar a algo beneficioso para los dos". Adujo que no hubo comunicaciones subsiguientes entre las partes sobre las propuestas intercambiadas. Que, a partir de septiembre del 2020 hasta marzo del 2022 el demandado pagó una renta mensual de dos mil

---

[2] SUMAC TA, Apéndice 83.
[3] SUMAC TA, Apéndice 91.

dólares ($2,000.00) unilateralmente. Indicó que mediante carta fechada 2 de agosto de 2022 el demandante requirió el cumplimiento del contrato y el 26 de octubre de 2022 emitió una segunda comunicación. Alegó que el demandado emitió un cheque de trece mil ochocientos dólares ($13,800.00) para sustituir los pagos de renta que no fueron recogidos, a razón de dos mil trescientos dólares ($2,300.00) mensuales, lo que fue aceptado bajo protesta por el Lcdo. José Rubén Vélez Marrero. Aseveró que, a partir de septiembre del 2022 hasta junio del 2023, fecha en que se presentó la Demanda, Loinaz Martín realizó pagos mensuales continuos por concepto de renta a razón de dos mil seiscientos dólares ($2,600.00). Adujo que no hubo una novación modificativa. Agregó que, "[s]in una manifestación clara de aceptación por parte del arrendador, no puede presumirse que el silencio constituya una conformidad con la modificación propuesta."[4] Cuestionó, también la validez de la cláusula de renovación automática y la de opción a compra, porque faltaba la firma de uno de los titulares. Además, por dejar al arbitrio de uno de los contratantes la validez del contrato.

El 24 de marzo de 2025, el demandado Loinaz Martín presentó un escrito de Réplica a Oposición a la Solicitud de Sentencia Sumaria.[5]

Mediante *Resolución* emitida el 30 de mayo de 2025, el Tribunal de Primera Instancia denegó, la Sentencia Sumaria de la parte demandada y la Oposición y Solicitud de Sentencia Sumaria a favor del demandante.[6] En esta, el foro primario emitió las siguientes determinaciones de hechos[7]:

---

[4] SUMAC TA, Apéndice 91, pág. 33, párrafo 23.
[5] SUMAC TA, Apéndice núm. 95.
[6] SUMAC TA, Apéndice núm. 101.
[7] Notas al calce omitidas.

1. El 1 de enero de 2014, Arroyo López y Loinaz Martín suscribieron el Contrato de Arrendamiento y Opción a Compra para la Propiedad.

2. Arroyo López contaba con el consentimiento de su esposa Ortiz para suscribir el Contrato de Arrendamiento.

3. El Contrato de Arrendamiento establece que el canon de arrendamiento será de $2,600.00 mensuales.

4. El término original del Contrato de Arrendamiento comenzó el 1 de enero de 2014 y vencía el 1 de enero de 2015.

5. El Contrato de Arrendamiento establece que Loinaz tiene la discreción de extender la vigencia del contrato por términos adicionales de un (1) año, previa notificación al arrendador. En específico, esta cláusula dispone que:

> TERMINO: El arrendador cede en arrendamiento al arrendatario la propiedad por un término de un año comenzando el 1 de enero de 2014 y concluyendo el 1 de enero de 2015. El arrendatario podrá a su discreción extender el contrato por términos adicionales de un año contado a partir del 1 de enero de 2016, sujeto a previa notificación al arrendador.

6. El Contrato de Arrendamiento contiene, además, una cláusula de opción para la compra de la Propiedad en los siguientes términos:

> 12. OPCIÓN A COMPRA: En consideración a los cánones de arrendamiento pactados en este contrato, el Arrendador se abstendrá de ofrecer la propiedad para la venta a terceros. El arrendador le concede al arrendatario un derecho de opción a compra al precio estipulado de $350,000.00 o el precio de tasación. El derecho de opción estará en efecto mientras el presente contrato, o sus prórrogas, permanezcan vigentes.

7. El Contrato de Arrendamiento dispone que el arrendatario se compromete a pagar al arrendador la suma de $2,600.00 pagaderos no más tarde de los días 29 de cada mes, los cuales se efectuarían mediante cheque enviado a una dirección postal.

8. A pesar de que el Contrato establecía que se enviaría a una dirección postal, la práctica es que se recogía el cheque en la Propiedad.

9. En las ocasiones en que Ortiz, esposa de la parte demandante, recogía el cheque, nunca le habló sobre terminar el contrato.

10. A pesar de que la cláusula sobre el término del contrato dispone que la renovación del contrato requería una previa notificación por parte del arrendatario, es decir, de Loinaz Martín, este no informó la renovación, más se mantuvo emitiendo cheques por cánones de arrendamiento a la parte demandante, así como en el presente se mantiene en la Propiedad.

11. En marzo 2020, la Gobernadora Wanda Vázquez Garced decretó un estado de emergencia debido a la amenaza que representaba la pandemia por la propagación del COVID19. Como parte de las medidas tomadas para detener la propagación del virus y promover el distanciamiento social, el 15 de marzo de 2020, la Gobernadora firmó una Orden Ejecutiva Núm. OE-2020-023, en la cual se ordenó el cierre de negocios no esenciales, excluyendo farmacias, supermercados, gasolineras, bancos, y cualquier negocio relacionado con la distribución de alimentos. Además, se impuso una orden de permanecer en el hogar.

12. Las medidas tomadas por el Gobierno de Puerto Rico durante la pandemia de COVID-19 provocaron el cierre de la oficina de Loinaz Martín en la Propiedad.

13. El 1 de septiembre de 2020, Loinaz Martín le escribió un correo electrónico a Arroyo López y Ortiz donde expuso que:

Saludos doctor Arroyo y Doña Cusa:

Espero que estén en buena salud en estos tiempos tan retantes. Le escribo este mensaje para informarles que desde el 15 de marzo de 2020 nuestro personal ha estado trabajando remoto. Solo Moraima, Mary Ann y yo nos estamos reportando a la oficina. Sospecho que continuaremos así por tiempo indefinido. Al igual que tantos, nuestro volumen de negocio ha bajado significativamente. La baja en los primeros meses fue gradual pero los últimos tres meses han sido en caída. Mi estilo gerencial es que me tienen que matar en la raya, pero el golpe de 60% de reducción en volumen nos ha llevado a explorar reducciones de costo. Incluyendo renta. Nuestro interés es permanecer en la propiedad y por eso propongo que retornemos a $2,000 mensuales comenzando hoy hasta el 31 de diciembre de 2020. Mi mayor esperanza es que se haya estabilizado la situación, y podamos retornar a la renta actual. Si ustedes no pueden aceptar ese ajuste, entonces les notificó que estaremos desalojando la propiedad. La fecha se las informaré próximamente. Estoy disponible para dialogar al respecto a su conveniencia. 7873127000. Mucha salud a todos. Gracias, Diego.

14. El 3 de septiembre de 2020, Arroyo López, por medio del correo electrónico de su esposa, Ortiz,

respondió al correo electrónico de Loinaz Martín donde le expresó que:

Hola: Mal de muchos y consuelo de todos. Todos estamos en el mismo bote. La reducción en negocios ha sido para nosotros también. Te propongo, que reduzcas a $2,300 así cubro, hipoteca, contribuciones y seguro, que ahora es comercial.

Otra alternativa, es que se haga una tasación de la propiedad y puedas comprarla a los intereses actuales y tal vez pagues menos. Piénsalo y me llamas, podemos llegar a algo beneficioso para los dos.

Saludos, Ernesto

15. A partir de septiembre de 2020, Loinaz Martín pagó a la parte demandante una renta mensual de $2,000.00.

16. Para el 1 de enero de 2021, Loinaz Martín se mantuvo pagando la suma de $2,000.00 en concepto de renta dirigida a Arroyo.

17. Ortiz López en ningún momento le comunicó a Loinaz Martín que no le aceptaría la suma de $2,000.00 por renta, sino que se lo comunicó a la mamá de Loinaz Martín.

18. Mientras el Contrato de Arrendamiento se encontraba vigente, Ortiz comisionó la preparación de una tasación de la Propiedad. El 17 de septiembre de 2021, el tasador Juan R. Aguayo Díaz, emitió un informe de valoración de la Propiedad en la que se determinó que tenía un valor de mercado de $290,000.00.

19. El 14 de diciembre de 2021, Loinaz Martín suscribió una carta dirigida a la Oficina de Gerencia de Permisos del Municipio de San Juan donde dispuso que:

Sirva la presente para certificar que la oficina de abogados Diego J. Loinaz Martín, PSC, también conocida como Loinaz Martín, PSC, ubica en mi propiedad de la calle Upsala (258) esquina Avenida Glasgow (1883) en College Park, San Juan. Que dicha oficina tiene Permiso de Uso desde el 6 de marzo de 2014.

Por acuerdo entre las partes el contrato de arrendamiento se ha renovado automáticamente anualmente y continua vigente a esta fecha.

20. Para el 1 de enero de 2022, Loinaz Martín se mantuvo pagando la suma de $2,000.00 en concepto de renta dirigida a Arroyo López.

21. Durante los meses de septiembre 2020 hasta febrero de 2022 el Arroyo López o su esposa se personaron a la Propiedad a recoger los cheques.

22. El 8 de marzo de 2022, Loinaz Martín le envió un correo electrónico a Arroyo López y su esposa, Ortiz, mediante el cual expresó lo siguiente:

Doña Cusa y Don Ernesto,

Reciban un cálido abrazo de mi parte. Sé que están en buena salud y espero que siga siendo así. Mary Ann y Doña Cusa han tenido diálogo sobre la propiedad. Por eso quería enviarle esta nota sobre los dos puntos recurrentes.

La Renta. Recibido la petición de retornar al canon modificado de $2,600. Ustedes merecen un trasfondo. En el 2021 nuestro ingreso bajo por 50% a raíz del efecto de la pandemia en nuestros clientes. Ese bajón de 50% ha subido por 25%. O sea, seguimos sin retornar a nuestros ingresos originales en un 25%. Además de la renta, hicimos ajustes en otros renglones salvo el personal. En el personal, tuvimos que aumentar salarios a riesgos de perder los buenos talentos que forman parte del equipo. Como ustedes habrán leído, la retención del buen talento o su reclutamiento se ha tornado en una difícil tarea. A la luz de esta situación, propongo llevar la renta a $2,300 provisto que, si la tendencia se mantiene y con el favor de Dios, escalamos a los $2,600 antes que se acabe el año.

La Compra. En meses recientes un tasador visitó la propiedad en dos ocasiones. Nos gustaría que compartan la tasación con nosotros. El comportamiento de los valores de las propiedades ha sido desmedido y nos trae curiosidad conocer el valor en tasación. Provisto que los intereses hipotecarios no sigan en aumento, podemos encaminarnos a comprar la propiedad. Tan pronto recibamos la tasación, les remitimos una propuesta de compraventa. Por lo pronto, espero por la respuesta al canon y la copia de la tasación. Mientras, espero que sigan en buena salud.

23. El 2 de agosto de 2022, la parte demandante, por conducto de su representación legal, le cursó una carta a Loinaz Martín donde expresó lo siguiente:

Estimado compañero:

Saludos cordiales. Según le adelantara vía telefónica la semana pasada, me dirijo a usted en representación del Dr. Ernesto Arroyo y su esposa, Doña Gloria J. Arroyo, en relación con la propiedad que usted ocupa ubicada en 1883 Ave Glasgow, Esquina Upsala 258 en San Juan, Puerto Rico. A esta fecha el contrato de arrendamiento está vencido por incumplimiento. El acuerdo de

arrendamiento establecía un canon mensual de $2,600.00. Según nos ha indicado nuestro representado, usted envió una comunicación proponiendo un pago de $2,000.00 para los meses de septiembre 2020 a diciembre 2020. En respuesta, la Sra. Arroyo le ofreció se redujera a $2,300.00, para cubrir los pagos de arrendamiento relacionados con dichos cuatro meses. Esto no se hizo. Desde septiembre 2020 usted unilateralmente ha estado realizando los pagos de renta por una cantidad menor a la establecida, acumulando a esta fecha un balance adeudado de $25,200.00. Mediante la presente comunicación le notificamos lo que ya le habíamos adelantado por teléfono, que dicha propiedad será puesta a la venta por la cantidad de $500,000.00. Se le notifica por usted ocupar la misma. Si es su interés adquirir el inmueble se le concede hasta el 20 de agosto de 2022 para que nos notifique su intención de compra o si, por el contrario, desocupará la propiedad a su más rápida conveniencia. Le notificamos además que, a partir del 1ro de septiembre del 2022, se establece el pago de arrendamiento en $4,000.00. Según conversación telefónica que sostuviéramos, usted enviaría los pagos de rentas pendientes a nuestras oficinas, aunque le escribiéramos que se aceptan bajo disputa. Esto no ha sucedido mensuales, sin contrato, de mes a mes, hasta tanto compre o desaloje la propiedad.

Puede comunicarse al 787-773-1111 o 787-501-4575, para indicar su interés para adquirir la propiedad o notificar la fecha en que desocupará la misma. Agradeceré que, en adelante, todas las comunicaciones que sean dirigidas al Dr. Ernesto Arroyo o su esposa, relacionadas con la propiedad aquí en cuestión, ya sean a través suyo o de un tercero, se realicen por conducto del suscribiente.

24. El 4 de agosto de 2022, Loinaz Martín respondió a la misiva del 2 de agosto de 2022 enviada por la parte demandante:

Estimado licenciado Vélez:

Recibirnos en el día de hoy su carta con fecha del 2 de agosto. Procedemos a responder a su carta. Primero es menester aclarar omisiones y expresiones desatinadas en su carta sobre el alcance de nuestra conversación la semana pasada, y la relación entre las partes. Usted llamó al suscribiente durante sus vacaciones familiares y, por cortesía a los Arroyo, se le escuchó. Se le solicitó hasta esta semana para brindarle una respuesta a sus planteamientos. Las expresiones hechas durante la conversación fueron en carácter preliminar sin renunciar a cualquier planteamiento legal o de otra naturaleza a nuestro favor. Respondernos a su carta sin renunciar a defensa u

alegación alguna. En nuestra conversación, usted manifestó que los Arroyo se sentían "incómodos" con la "situación" con este servidor. Se le aclaró en nuestra conversación que desconocíamos porqué se sentían incómodos y mucho menos que existía una situación. Le expliqué que Don Ernesto prefiere recoger el cheque de rentas en nuestras oficinas en vez que nosotros lo remitamos por correo. Siendo ese el único contacto que se suele tener, Don Ernesto nunca ha expresado una situación incómoda con este servidor o el resto de nuestro equipo. Incluso, al regresar a la oficina en el día de hoy se le preguntó a 'Vial.), Ann Martín, la señora madre del suscribiente y parte de nuestro equipo, si los Arroyo habían expresado alguna situación incómoda. No solo me indicó que no, sino que afirmó que los intercambios de ambas partes siempre son amables. No le quepa la menor duda que el respeto y cariño por la familia Arroyo siempre ha sido, y siempre será, por encima a cualquier discusión terrenal como la que provoca su carta.

Como le expliqué en nuestra conversación, nos sorprendió que los Arroyo, de repente, luego de más de una década, no recogieron el pago mensual. Durante el 2022, se les llamó o escribió emails procurando hacerles la entrega de los pagos. No recibimos respuesta tras estas gestiones. Incluso, nos preocupó que su salud estuviese comprometida. Por eso, este servidor intentó llamar a su hijo y amigo, Ernesto. Tampoco recibimos respuesta. Ese silencio ciertamente no produjo notificación o explicación de una situación incómoda, y mucho menos, reclamos monetarios como su carta plantea por primera vez. Usted debería entender que la relación de arrendamiento entre los Arroyo y nosotros tiene 12 años de existencia. Ese es el contexto que su llamada y carta omiten. 12 años que nunca hemos faltado a los pagos de canon. Más allá, son 12 años que se invirtió en traer la propiedad a ser vivible incluyendo inversiones estructurales responsabilidad de los arrendadores. No obstante, nosotros hemos efectuado todos los arreglos, algunos sin ajuste en el canon y otros aplicados contra los pagos mensuales. Durante nuestra conversación, le indiqué que había impartido instrucciones para que los cheques del 2022 se le enviaran por correo certificado a pesar de lo que ha sido el uso y costumbre entre las partes por los últimos 12 años. Ahora de vuelta a la oficina, procederemos a enviarle los cheques a usted. Sin embargo, le expliqué en nuestra conversación que el canon de arrendamiento en el origen era $2,000.00. Los arrendadores manifestaron que su interés era cubrir sus gastos de hipoteca. Luego, años más tarde y por voz de Doña Cusa, ellos solicitaron aumentarlo por $600.00. Le expliqué también a usted, y previamente a ellos, que el

golpe de la pandemia nos redujo el volumen de negocio por más de 50% repercutiendo en un ajuste en nuestros gastos. No nos hemos recuperado todavía. No obstante, la petición de Doña Cusa de un pago intermedio de $2,300.00 se cumplió. Si tan solo ellos hubiesen recogido los cheques, se hubiesen percatado. Desconocemos cómo usted efectuó el cálculo del balance que reclama su carta. Si quiere brindarnos el desglose de su cómputo, procederemos a su evaluación. Por lo pronto, rechazamos cualquier alegación de deuda por parte nuestra. En cuanto a la compra de la propiedad, siempre fue el interés de los Arroyo vender y el nuestro comprar. Sin embargo, los Arroyo nunca han dicho precio como punto de partida de una negociación. Sobre este particular, nuestra posición a ellos fue que debería estar basado en las comparables puesto que tendríamos que financiar la compra. En nuestra conversación le indiqué, que le expresamos por escrito a los Arroyo nuestro interés en comprar y les pedimos la tasación que ellos comisionaron en el 2022. No se recibió respuesta ni tasación.

Por esa razón, el plazo que nos concede hasta el 20 de agosto es superfluo. Sin embargo, para que no huelgue duda, afirmamos nuestro interés en comprar la propiedad en el 1883 de la Avenida Glasgow esquina Upsala. Procederemos a efectuar las gestiones de financiamiento con nuestro banco antes de brindarle una respuesta sobre el precio de compraventa ofertado.

En cuanto al aumento de renta a partir del 1 de septiembre de 2022, le indicamos que procederemos a efectuar el pago mensual de $2,600.00. En cuanto a sus menciones de desalojar o desocupar la propiedad, no vemos razón para responderle. Sobre su petición que las comunicaciones sean cursadas a través suyo, así se hará en cuanto a aquellas de estirpe legal. No vemos razón para truncar 35 años de amistad ni 12 años de relación comercial por el mero hecho que usted envió una carta. Apreciaremos que esta carta sea compartida con Don Ernesto y Doña Cusa.

25. Al mes de agosto de 2022, Loinaz Martín había realizado 24 pagos consecutivos de renta mensual, de septiembre de 2020 a agosto de 2022, por la suma de $2,000.00.

26. Durante varios meses, Loinaz Martín no recibió respuesta a su carta de 4 de agosto de 2022.

27. Durante los meses de septiembre y octubre de 2022, Loinaz Martín realizó pagos mensuales de renta a razón de $2,300.00.

28. A partir de noviembre de 2022 y hasta al menos el 7 de julio de 2023, Loinaz Martín ha pagado la suma mensual de $2,600.00.

29. El 20 de octubre de 2022, dos meses y medio más tarde, la representación legal de la parte demandante respondió rechazando la oferta de Loinaz Martín efectuada mediante carta de 4 de agosto de 2022. En esta, específicamente, se expuso que:

Acusamos recibo de su comunicación de fecha 4 de agosto de 2022.

Nos agrada saber que le profesa a nuestros representados un cariño y respeto que se encuentra por encima de cualquier discusión terrenal. Basado en ese sentimiento deposito mi confianza para que podamos resolver la situación que nos ocupa de manera rápida y amigable. La situación es la siguiente, usted firmó el día 1ro de enero de 2014 un contrato de arrendamiento con nuestros representados para el alquiler de la propiedad localizada en el 1883 Ave Glasgow, Esquina Upsala 258 en San Juan, Puerto Rico. Las negociaciones entre las partes relacionadas al canon de arrendamiento previas a la firma del contrato no tienen fuerza legal. La ley entre las partes es lo acordado mediante el contrato. El canon de arrendamiento estipulado fue $2,600.00 mensuales. Usted no se está cumpliendo con el contrato por una decisión unilateral suya como arrendatario. Como le adelantáramos en nuestra carta del 2 de agosto del corriente, el contrato de arrendamiento está vencido por incumplimiento. Desde el momento que le enviara su comunicación por correo electrónico a la parte arrendadora proponiendo una reducción de $600 del pago de renta, o sea, bajar el pago mensual a $2,000.00 para los cuatro meses de septiembre, octubre, noviembre y diciembre de 2020, usted se encuentra en incumplimiento con los acuerdos que usted firmó.

En aquella ocasión, la parte arrendataria le ofreció se redujera solo por $300.00, lo que significaba un pago mensual por $2,300.00 por esos cuatro meses. Usted decidió obviar la oferta de nuestros representados, la cual era solo para los cuatro meses que usted solicitó. Estuvo pagando solo una porción del canon de arrendamiento no solo por los cuatro meses mencionados, continuó pagando los $2,000.00 hasta la fecha de nuestra intervención, a pesar que la parte arrendadora le indicó que no podía cubrir los gastos relacionados con esa cantidad.

Desde septiembre 2020 usted ha estado realizando los pagos de renta por una cantidad menor a la establecida por lo que tiene un balance adeudado.

Luego de nuestra conversación telefónica usted nos pidió que le dijera a nuestros representados que aceptaran los pagos que usted enviaría bajo protesta para no seguir aumentando el atraso. Así se lo recomendamos. Los pagos que hemos recibido en nuestras oficinas todavía se están realizando por una cantidad menor a la estipulada. Los pagos recibidos son por $2,300.00 mensuales los cuales reflejan una disminución de $300.00, no autorizada por la parte arrendadora. Todos estos pagos se han recibido bajo protesta y están en contra de lo acordado en el contrato. La disminución del canon que usted mismo propuso, la cual nunca fue aprobada por la parte arrendadora, fue por cuatro meses. Al día de hoy, a pesar de que me indicó en la referida llamada que realizaría los pagos correspondientes y se pondría al día en su atraso y en su misiva indica que volverá a pagar el canon acordado, usted nunca se ha reinstalado a los pagos estipulados en el contrato de arrendamiento de $2,600.00, ni ha pagado lo adeudado por sus atrasos.

Usted sostiene que tiene una relación de amistad con nuestros representados de muchos años. Le pido que entienda cual es mi función en la situación que nos ocupa. Nosotros hemos sido contratados para disponer de la propiedad que usted ocupa. Los dueños quieren recobrar el dinero adeudado por usted como parte arrendataria y recobrar la posesión de la propiedad. Nuestra función no es mantener amistades. Nuestros representados nos han pedido que comencemos los procedimientos para recuperar la posesión de la propiedad. Se le avisa que tiene que deshabitar la misma lo antes posible. No se va a renovar el contrato de arrendamiento. Le exhortamos a que nos indique la fecha más cercana para la inspección y entrega de la propiedad y así nos evitamos un procedimiento de desahucio por la vía judicial.

Como le habíamos indicado en nuestra carta anterior, el canon de arrendamiento comenzando el primero de septiembre es de $4,000.00 mensuales, los cuales se mantendrán hasta la entrega de la propiedad.

Como le había adelantado vía telefónica, Don Ernestito y Doña Cusa son personas mayores y no quieren este tipo de situaciones ni malos entendidos en sus vidas.

Esperamos su pronta respuesta no más tarde de 15 días del envío de la presente.

30. Durante el mes de agosto de 2022, Loinaz Martín solicitó en varias ocasiones a la parte demandante, a través de su representación legal, copia de la escritura de compraventa de para tramitar con su banco el

financiamiento necesario para compra de la Propiedad.

31. Tras no recibir la tasación comisada por Ortiz en el año 2021, ni la escritura de compraventa de la parte demandante, Loinaz Martín le solicitó al banco que tramitara una tasación para llevar a cabo el proceso de financiamiento de la Propiedad.

32. La Propiedad fue tasada por un valor de mercado de $360,000.00.

33. El 28 de noviembre de 2022, Loinaz Martín envió una comunicación al abogado de la parte demandante para coordinar una llamada para discutir la tasación de la propiedad. El Demandante no respondió nunca a esta comunicación.

34. Luego de recibir la tasación de la Propiedad, el 15 de diciembre de 2022, Loinaz Martín le notificó a la parte demandante, a través de su abogado, una carta informando que en ejercicio de su derecho de opción ofrecía comprar la Propiedad por el precio de tasación de $360,000.00.

35. Durante el descubrimiento de prueba, Ortiz, esposa de Arroyo López, admitió que su abogado nunca le notificó copia de la carta de 15 de diciembre de 2022 de Loinaz Martín y desconocía que la parte demandada había ofrecido comprar la propiedad por la suma de $360,000.00.

36. Loinaz Martín efectuó el pago de renta correspondiente al mes de enero de 2023, por la suma de $2,600.00. Este pago fue recibido, endosado y depositado por la parte demandante sin objeción, condición ni reserva de derecho, hasta la presentación de la Demanda de epígrafe el 9 de junio de 2023.

Como hechos controvertidos el foro de instancia plasmó los

siguientes:

1. Si las partes renegociaron o no el canon de arrendamiento de $2,600.00 para reducirlo o si fue Loinaz Martín quién unilateralmente redujo este a $2,000.00;

2. Si Loinaz Martín pagó un canon de arrendamiento reducido para descontar gastos incurridos en reparaciones de la Propiedad;

3. Si Ortiz, esposa de la parte demandante, sostuvo una conversación telefónica en el 2020 donde acordaron como medida temporera modificar el canon de arrendamiento a $2,000.00, con el entendimiento de que se aumentaría cuando fuera posible a $2,300.00 y luego al canon original de $2,600.00;

4. Si la parte demandante en algún momento previo a la carta del 2022 y la presentación de la demanda de epígrafe objetó el pago inferior de $2,000.00;

5. Si la parte demandante informó a Loinaz Martín que estaría fuera de Puerto Rico durante los meses de marzo a julio de 2022;

6. Si Loinaz Martín intentó comunicarse con el Arroyo-López, y su hijo, Ernesto Arroyo Ortiz, para coordinar la entrega de los cheques de renta;

7. Si, en efecto, el presunto Contrato de Arrendamiento y Opción de Compra se renovó para el periodo de 1 de enero de 2022 al 1 de enero de 2023 al Loinaz Martín efectuar el pago de $2,000.00 en enero de 2022, de modo que este podía ejercer su derecho de opción de compra de la Propiedad; y

8. Si hubo consentimiento por parte de Ortiz, esposa de la parte demandante, para la cláusula de opción de compra del Contrato de Arrendamiento y Opción de Compra.

Atendidos los planteamientos de las partes, el foro primario concluyó que persistían controversias sustanciales sobre hechos materiales en cuanto a todas las causas de acción. Agregó el tribunal de origen que ambas partes prestaron declaraciones juradas y deposiciones que contradicen los alegados hechos de cada una. Entendió que, correspondía la celebración de un juicio plenario para evaluar la prueba y las alegaciones de cada parte.

En desacuerdo, 16 de junio de 2025, Loinaz Martín solicitó Reconsideración y esta fue declarada *No Ha Lugar* el 17 de junio de 2025.[8]

Aun inconforme, el 17 de julio de 2025, Loinaz Martín presentó un recurso de *certiorari* en este foro de revisión intermedio.

Primero: Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Sentencia Sumaria bajo el fundamento de que subsistían controversias de hechos, cuando las alegadas controversias no eran materiales ni impedían resolver el pleito como cuestión de derecho por la vía sumaria.

---

[8] SUMAC TA, Apéndices 102 y 103.

Segundo: Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Sentencia Sumaria sin reconocer que, conforme a las determinaciones de hechos expresamente adoptadas en la Resolución impugnada, se configuró una novación modificativa tácita de los términos y condiciones del Contrato de Arrendamiento.

Tercero: Erró el Honorable Tribunal de Primera Instancia al concluir que subsistían controversias reales y sustanciales en cuanto a la validez de la cláusula de opción a compra y el consentimiento de la señora Ortiz, aun cuando dichos señalamientos fueron alegados por primera vez en la Oposición a la Solicitud De Sentencia Sumaria, sin que se enmendara la Demanda y sin fundamento fáctico ni evidencia que justificara su consideración por el Tribunal.

Cuarto: Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Enmiendas a las Determinaciones de Hechos y la inclusión de Determinaciones de Hechos Adicionales presentada por el Demandado al amparo de la Regla 43.1 de Procedimiento Civil, pese a que las mismas estaban debidamente fundamentadas y eran necesarias para reflejar con fidelidad la evidencia no controvertida en el expediente.

En reacción al recurso, el 8 de agosto de 2025, Arroyo López interpuso una Moción de Desestimación. Alegó que desde el 11 de julio de 2025, el Tribunal de Primera Instancia nombró defensor judicial del recurrido a su hijo, el señor Ernesto Arroyo Ortiz, quien suple la capacidad del demandado-recurrido en el caso de autos. Sostuvo que el peticionario no le notificó el recurso al defensor judicial, ni justificó de esa omisión, por tanto, carecíamos de jurisdicción para entender en el recurso.

El peticionario presentó una *Moción en Cumplimiento de Orden y en Oposición a Moción de Desestimación*. Sostuvo que el recurrido estuvo representado por su abogado de récord, por tanto, la notificación electrónica cursada satisfizo plenamente el mandato reglamentario de la Regla 33 (B) del Reglamento del Tribunal de Apelaciones. Señaló que el defensor judicial no recibió una notificación separada de la *Resolución* recurrida. Además, que el defensor judicial no advino parte indispensable y, de serlo,

la falta de notificación del recurso de *certiorari* sería subsanable por existir justa causa.

**II.**

**A.**

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Batista Valentín v. Sucn. Batista Valentín, 2025 TSPR 93, 216 DPR ___ (2025); Consejo Tit. v. Rocca Dev. Corp., et als., 2025 TSPR 6, 215 DPR __ (2025); BPPR v. Zorrilla y otro, 214 DPR 329, 338 (2024); Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

En particular, la Regla 36.3(e) dispone que un tribunal dictará sentencia sumariamente "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente". 32 LPRA Ap. V, R. 36.3(e); Batista Valentín v. Sucn. Batista Valentín, *supra.*

Los hechos materiales se refieren a aquellos que pueden alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo aplicable. Cruz, López v. Casa Bella y otros, 213 DPR 980, 993 (2024). Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable, y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Negrón Castro y otros v. Soler Bernardini y otros,

2025 TSPR 96, 216 DPR __ (2025); Meléndez González et al. v. M. Cuebas, 193 DPR 100, 109 (2015).

De no haber hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en derecho. Cruz, López v. Casa Bella y otros, *supra*; Aponte Valentín et al. v. Pfizer Pharm., 208 DPR 263, 278 (2021); Rivera Matos et al. v. Triple-S et al., 204 DPR 1010-1024 (2020). Al atender la solicitud de sentencia sumaria y su oposición, los tribunales deberán: (1) analizar todos los documentos incluidos en las mociones y aquellos que obren en el expediente del tribunal, y (2) determinar si la parte opositora controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Torres Pagán et al. v. Mun. de Ponce, 191 DPR 583, 598 (2014). La sentencia sumaria sólo debe dictarse en casos claros, y cualquier duda debe resolverse en contra de la parte que solicita la sentencia. Rivera et al. v. Superior Pkg., Inc. et al., 132 DPR 115, 133 (1992).

Por otro lado, el Tribunal Supremo ha manifestado que no es aconsejable dictar sentencia sumaria en casos donde existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos, como la intención, los propósitos mentales o la negligencia. Cruz, López v. Casa Bella y otros, *supra*; Aponte Valentín et al. v. Pfizer Pharm., *supra*, pág. 278. No obstante, el hecho de que la controversia de autos involucrara elementos subjetivos y de intención no representa un obstáculo para disponer de ella sumariamente, si de la solicitud de sentencia sumaria y sus anejos surge claramente que no hay controversia en torno a los hechos materiales. Batista Valentín v. Sucn. Batista Valentín, *supra*, pág. 10; Cruz, López v. Casa Bella y otros, *supra*, págs. 993-994.

En cuanto al alcance de la revisión judicial, los tribunales apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. Negrón Castro y otros v. Soler Bernardini y otros, *supra*; Consejo Tit. v. Rocca Dev. Corp., et als, *supra*; Soto y otros v. Sky Caterers, 2025 TSPR 3, 215 DPR __ (2025); BPPR v. Cable Media, 2025 TSPR 1, 215 DPR __ (2025). Nuestra función revisora conlleva examinar de novo el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria. Birriel Colón v. Econo y otro, 213 DPR 80, 91-92 (2023); Meléndez González et al. v. M. Cuebas, *supra*, pág. 118.

**B.**

Cuando las partes suscribieron el contrato de arrendamiento en el año 2014 el cuerpo normativo aplicable era el Código Civil de 1930 ("Código Civil de 1930"). Para que un contrato tenga eficacia jurídica, será necesario que concurran los elementos de consentimiento, objeto y causa. Art. 1213 del Código Civil de 1930, 31 LPRA ant. sec. 3391. Además, Sonnell Transit Serv. v. Junta de Subasta, 2025 TSPR 85, 216 DPR __ (2025); Pérez Rodz v. López Rodz et al, 210 DPR 163, 186 (2022). Además, un contrato se considera perfeccionado con el mero consentimiento y, desde entonces, las partes quedan obligadas a cumplir con lo expresamente pactado y las consecuencias de su incumplimiento. Art. 1210 del Código Civil de 1930, 31 LPRA ant. sec. 3375. Es decir, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes. Art. 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994. Ese contrato solo produce efecto entre las partes que lo otorgan y sus herederos. Art. 1209 del Código Civil de 1930, 31 LPRA ant. sec. 3374; Batista Valentín v. Sucn. Batista Valentín, *supra*, pág. 12.

Conforme al principio de la autonomía de la voluntad, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre y cuando no sean contrarias a la ley, la moral y el orden público. Art. 1207 del Código Civil de 1930, 31 LPRA ant. sec. 3372. Sin embargo, la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. Art. 1208 del Código Civil de 1930, 31 LPRA ant. sec. 3373.

Ahora bien, las obligaciones pueden modificarse variando su objeto o sus condiciones principales. Artículo 1157 del Código Civil 1930, 31 LPRA ant. sec. 3241. Así pues, en nuestro ordenamiento, la novación puede tener carácter modificativo o extintivo. Mun. de San Juan v. Prof. Research, 171 DPR 219, 244 (2007). Esto es, un contrato puede ser alterado, en virtud de la novación modificativa. P.D.C.M. Assoc. v. Najul Bez, 174 DPR 716, 725 (2008); Véanse, Municipio de San Juan v. Professional, 171 DPR 219; United Surety v. Villa, 161 DPR 618 (2004); Miranda Soto v. Mena Eró, 109 DPR 473, 478 (1980). La novación modificativa ocurre cuando subsiste una obligación alterada. P.D.C.M. Assoc. V. Najul Bez, *supra*, pág. 725. Se concreta la novación modificativa de una obligación cuando no exista la intención de extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva. P.D.C.M. Assoc. V. Najul Bez, *supra*, pág. 725; United Surety v. Villa, *supra*, pág. 619.

En el caso de la novación modificativa, esta se rige por las reglas de interpretación y exteriorización de la voluntad, sin que se requiera particularmente el animus novandi, el elemento esencial de la novación extintiva. P.D.C.M. Assoc. v. Najul Bez, supra, págs. 725-726 (citas omitidas). No obstante, la

modificación de la obligación no queda al arbitrio de una de las partes. P.D.C.M. Assoc. v. Najul Bez, *supra.* Es decir, la ausencia del animus novandi no implica que nuestro ordenamiento admita la modificación unilateral de una obligación. Íd, pág. 726. Para que ocurra la novación modificativa no se exige encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar un ánimo de cambio. Íd. De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes. Ello, debido a que la novación encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. Warner Lambert Co. v. Tribunal Superior, 101 DPR 378, 389 (1973), Hernández v. Burgos, 40 DPR 460, 463 (1930). Para evaluar si ocurrió una novación modificativa de los términos del contrato se requiere examinar la conducta de las partes a la luz de la prueba que obra en el expediente. P.D.C.M. Assoc. v. Najul Bez, *supra*, pág. 727.

El Tribunal Supremo de Puerto Rico en P.D.C.M. Assoc. v. Najul Bez, *supra*, pág. 733, citando al comentarista español, Luis Diez-Picazo, expresó que, ocurre una declaración de voluntad tácita cuando, "el sujeto no manifiesta de modo directo su voluntad mediante los signos adecuados para ello, sino que realiza una determinada conducta que por presuponer necesariamente tal voluntad es valorada como declaración por el ordenamiento jurídico". L. D. Díez-Picazo, Sistema de Derecho Civil, 7ma ed., Madrid, Tecnos, 1989, Volumen I, pág.507. Seguido, el Tribunal Supremo indicó que el elemento crucial del consentimiento tácito es la conducta de la persona, la cual debe revelar de forma **inequívoca, la voluntad de consentir**. P.D.C.M. Assoc. v. Najul

Bez, *supra*; Teachers Annuity v. Soc. de Gananciales, 115 DPR 277, 290 (1984). (Énfasis nuestro).

**III.**

En el primer y segundo señalamiento de error el peticionario alega que en el presente caso ocurrió una novación de los términos del Contrato. Adujo que los hechos que el tribunal de instancia designó que estaban en controversia, no son hechos materiales con respecto a la existencia o no de una novación modificativa del canon de arrendamiento. Expresó que la controversia medular gira en torno a si la aceptación por espacio de dos (2) años de los pagos de renta por la suma menor a la pactada tuvo el efecto de modificar el canon de arrendamiento pactado en el Contrato.

Revisamos.

El foro primario evaluó la sentencia sumaria que presentó el aquí peticionario y la oposición a esta. Emitió treinta y seis (36) hechos como no controvertidos y ocho (8) que presentaban controversias. Tras ello, el tribunal de instancia concluyó que no estaba en posición de resolver el caso de autos por la vía sumaria.

El foro primario consideró que Loinaz Martín sostuvo en su *Solicitud de Sentencia Sumaria* que no incumplió con el Contrato de Arrendamiento y Opción de Compra debido a que hubo un presunto acuerdo mediante el cual el canon de arrendamiento de dos mil seiscientos dólares ($2,600.00) fue reducido a dos mil dólares ($2,000.00). Consideró que Loinaz Martín aludió a la doctrina de la novación modificativa del contrato, como fundamento a sus alegaciones. También que este alegó que tenía derecho a ejercer la opción a compra.

Por otro lado, el foro de instancia evaluó las alegaciones del demandante a los efectos de que Loinaz Martín unilateralmente

estableció el canon de arrendamiento de dos mil dólares ($2,000.00) a pesar de que el Contrato de Arrendamiento y Opción de Compra, fijaba una cantidad de dos mil seiscientos dólares ($2,600.00.) Evaluó la alegación en cuanto que no hubo una modificación al contrato por la mera aceptación de pagos reducidos. Revisó también el argumento de que la opción de compra no era válida debido a que la esposa del demandante no firmó el referido acuerdo.

Notamos que la legitimidad de las alegaciones de las partes está supeditada a si hubo una modificación al contrato. Para dilucidar este asunto, el elemento crucial para la modificación de un contrato, como en todo acuerdo, es evaluar la voluntad **inequívoca** de consentir.[9] A su vez, se ha indicado que la modificación de la obligación no se puede dejar al arbitrio de una de las partes. Mas aun, cuando observamos de los hechos no controvertidos, que, aunque hubo una reducción de la renta por cuatro (4) meses, la propuesta del peticionario fue retomar el pago de dos mil seiscientos dólares ($2,600.00). También surge de los hechos no controvertidos que desde noviembre del 2022 a la fecha de presentada la demanda, el peticionario pagó los aludidos dos mil seiscientos dólares ($2,600.00), según el contrato original. Así pues, en nuestra función revisora, comprobamos que los hechos que el foro primario decretó que están en controversia, son esenciales para dilucidar ese aspecto medular. Ello, aun cuando el peticionario pretende minimizarlos al alegar que quedó claro que el contrato fue modificado.

La sala de origen entendió que lo correcto y adecuado era la celebración de un juicio plenario para tomar una decisión

---

[9] Ver P.D.C.M. Assoc. v. Najul Bez, *supra*; Teachers Annuity v. Soc. de Gananciales, *supra*.

acertada. Esto incluye la validez de la cláusula de opción a compra, pues en la *Solicitud de Sentencia Sumaria*, Loinaz Martín le solicitó al foro primario que dilucidara si ejerció correctamente su derecho de opción a compra. Por tanto, resulta adecuado y razonable que el foro primario incluya ese tema entre los asuntos a dilucidar. Concluimos pues que el peticionario no nos demostró que el foro primario incurriera en abuso de discreción o error al emitir la determinación aquí recurrida. Con lo anterior, disponemos también del tercer señalamiento de error.

En el último planteamiento de error, Loinaz Martín adujo que procedía enmendar la determinación de hechos número diecinueve (19) para aclarar que fue el señor Ernesto Arroyo, y no el demandado, quien suscribió la carta dirigida a la Oficina de Gerencia de Permisos del Municipio de San Juan.

Revisamos la referida misiva y en efecto, procede el cambio. Lo demás, no requiere nuestra intervención.

Acorde con el ejercicio adecuado de nuestra facultad discrecional, expedimos expedir el auto solicitado, a los únicos fines de corregir la determinación de hechos número diecinueve (19), por lo demás, se confirma.

**IV.**

Por los fundamentos que anteceden, se expide el auto para modificar únicamente la determinación de hechos número diecinueve, lo demás no amerita nuestra intervención.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones